# Exhibit J

Jessica K. Pride (SBN 249212)
**THE PRIDE LAW FIRM**
2831 Camino Del Rio South, Suite 104
San Diego, California 92108
Telephone: 619-516-8166
Facsimile: 619-785-3414
jpride@pridelawfirm.com

Attorneys for Plaintiff E.M.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – FIRST STREET COURTHOUSE

| | |
|---|---|
| E.M.[1], <br><br> Plaintiff, <br><br> v. <br><br> Varsity Brands, LLC; Varsity Spirit, LLC; Varsity Brands Holding Company, Inc.; U.S. All Star Federation, Inc. d/b/a U.S. All Star Federation; Cheerforce, LLC; Jeffrey G. Webb, an individual; Rebecca Herrera, an individual; Shawn Herrera, an individual; Shawn Miller, an individual, <br><br> Defendants. | CASE NO. 2:22-cv-09410-ODW (ASx) <br><br> **FIRST AMENDED COMPLAINT** <br><br> **DEMAND FOR JURY TRIAL** <br><br> -IMAGED CASE- |

Plaintiff files this complaint by and through undersigned counsel of record against the above-named Defendants using only her initials as it is alleged she is a victim of sexual assault. Plaintiff sues the above-named Defendants for money damages in connection with conduct: (1) in violation of the Protecting Young Victims from Sexual Abuse and Safe Sport Authorization Act of 2017, 18 U.S.C. §2255; (2) giving rise to common law claims of gross negligence, negligent

---

[1] Given the nature of the subject matter as well as the potential for harm that exists against those who come forward to inform against Defendants, the Plaintiff in this matter will be identified only by the initials, E.M. in conjunction with the factual underpinnings on this complaint.

FIRST AMENDED COMPLAINT
AND DEMAND FOR JURY TRIAL

1

supervision, and assault/battery; and (4) constituting violations of contractual and/or equitable responsibilities owed to Plaintiff. As a direct and proximate result of Defendants' collective and individual conduct, Plaintiff sustained and will continue to sustain actual and ongoing injuries and damages, and in support thereof, she alleges as follows:

## **INTRODUCTION**

1.     Beginning in or around 2005 and continuing until around 2008, Plaintiff was an All-Star athlete cheering on behalf of Defendant Cheerforce's Simi Valley location in Moorpark, California. Around the same timeframe, Defendant Cheerforce, and Defendants Becky and Shawn Herrera employed Defendant Shawn Miller as a cheer coach.

2.     In his capacity as a cheer coach, Defendant Miller was provided unfettered access to minor athletes, including Plaintiff, engaging with these minors on an intimate level and forming bonds with them.

3.     During the operative timeframe, Defendant Shawn Miller was a credentialed USASF coach and/or member, with the authority and ability to appear at USASF member gyms, and to attend USASF-sanctioned events, namely those hosted and affiliated with Defendants Varsity Spirit, LLC, Varsity Brands, Inc., and Varsity Brands Holding Company.

4.     As set forth more fully herein, beginning in 2005, and by virtue of the position of trust and authority granted to him, Defendant Shawn Miller, individually, in the course and scope of his role with Defendant Cheerforce, and as an authorized representative of Defendants U.S. All-Star Federation, Varsity Spirit, LLC, Varsity Brands, Inc., and Varsity Brands Holding Company systematically groomed and sexually abused Plaintiff.

5.     Though initially terrified to come forward following this abuse, in 2021 Plaintiff ultimately reported the abuse to her current coach, who assisted her in

THE PRIDE
LAW FIRM

FIRST AMENDED COMPLAINT
AND DEMAND FOR JURY TRIAL

2

reporting the abuse to Defendant U.S. All-Star Federation, the self-styled governance entity over Varsity Spirit, LLC affiliated All-star Cheer.

6.      Thereafter, rather than helping Plaintiff through the difficult process of reporting traumatic and prolonged sexual and physical abuse, Defendant U.S. All-Star Federation, the official body designated by the Defendants in this case to investigate allegations of abuse in All-star Cheer, re-traumatized Plaintiff, subjecting her to bullying, disbelief, and a dysfunctional investigatory process.

7.      Meanwhile, at all times relevant to this complaint, Defendant Shawn Miller remained a certified U.S. All-Star Federation coach, authorized to work with underage athletes, until finally, nearly a year after Plaintiff reported him, Defendant Miller was permanently banned from the sport. Yet, upon information and belief, this ban was not enforced because of Plaintiff's report, but instead due to other reports, and this ban did not contemporaneously result in Defendant Miller being reported to law enforcement for his conduct.

8.      During the relevant timeframe, as certified members of USASF, Defendants Cheerforce, Becky Herrera, Shawn Herrera and Shawn Miller worked in a consortium with Defendants Varsity Brands, LLC, Varsity Spirit, LLC, Varsity Brands Holding Company, (collectively "the Varsity Defendants") and the Varsity Defendants' owners and affiliates, including Defendant U.S. All Star Federation, Inc. d/b/a U.S. All Star Federation ("Defendant USASF"), and Defendant Jeff Webb to expand the Varsity Defendants' network of minor athletes and prop up the Varsity Defendants' billion-dollar business.

9.      During the relevant timeframe, and upon information and belief, Defendants Cheerforce, Becky Herrera, Shawn Herrera and Shawn Miller were part of a network of gym owners and coaches empowered and placed in positions of trust and authority by the Varsity Defendants, Defendant USASF, and Defendant Webb.

10.      At the same time, and upon information and belief, the Varsity Defendants, Defendant USASF and Defendant Webb knew or had reason to know

FIRST AMENDED COMPLAINT
AND DEMAND FOR JURY TRIAL

3

Defendant Miller, Defendant Cheerforce, and Defendants Becky and Shawn Herrera had engaged in significant misconduct and abuse involving USASF-member minor athletes.

11. Upon information and belief, the scheme to anoint specific gyms, coaches, choreographers, and vendors at the expense of best safety practices occurred as Defendant U.S. All-Star Federation, and Defendants Varsity Spirit, LLC, Varsity Brands, Inc., and Varsity Brands Holding, Co. were creating and expanding a business model reliant upon a pipeline of young athletes, each of whom was a participant of a member gym, and each of whom represented a significant contribution to the Varsity Defendants' business worth billions of dollars.

12. As set forth in this complaint, the Defendants, together and individually have knowingly, or with a reckless disregard, created, organized, and propagated a system of young-athlete abuse against innocent victims including Plaintiff.

13. This is a complaint for legal and equitable relief for one of the victims of this scheme.

## JURISDICTION, PARTIES, AND VENUE

14. This action arises pursuant to and involves questions requiring the interpretation of the laws of the United States and thus subject matter jurisdiction is conferred upon the Court by 28 U.S.C. §1331.

15. Supplemental jurisdiction over state law claims is conferred upon the Court by 28 U.S.C. §1367(a).

16. Currently, and during the operative timeframe of this complaint, Plaintiff was a citizen and resident of California, in Ventura County.

17. At all times relevant to this complaint, Defendant Cheerforce has been an All-star cheer and tumbling gym with a principal place of business in California. Upon information and belief, at all times relevant to this complaint, Defendant Cheerforce was an authorized USASF vendor, and, by and through its employees, owners, agents, and authorized representatives, all within the course and scope of

their responsibilities, did interact on a daily basis with minor children, at various USASF member gyms, camps, clinics, and competitions throughout the country.

18.     Upon information and belief, at all times relevant to this complaint, Defendant Shawn Miller ("Defendant Miller") was a USASF-credentialed member coach providing services to USASF-member minor athletes at Defendant Cheerforce and other authorized gyms in the Varsity Spirit, LLC network. As an authorized USASF member, Defendant Miller was empowered to access USASF-member minor athletes including Plaintiff.  As of today, Defendant Miller is a citizen and resident of California, in Los Angeles County.

19.     Upon information and belief, and at all times relevant to this complaint, Defendants Becky and Shawn Herrera ("the Herrera Defendants") were USASF-credentialed member gym owners and coaches, providing services to USASF-member minor athletes in various locations in California. As authorized USASF members, the Herrera Defendants were empowered and are still empowered to access USASF-member minor athletes, including Plaintiff. As of today, the Herrera Defendants are citizens and residents of California, in Ventura County.

20.     At all times relevant to this complaint, Defendant Varsity Brands, LLC (f/k/a Varsity Brands, Inc.) ("Defendant Varsity Brands") has been a for-profit entity organized under the laws of Delaware with its principal place of business in Memphis, Tennessee. It is the corporate parent company of Defendant Varsity Spirit, LLC (f/k/a Varsity Spirit Corporation).

21.     Defendant Varsity Brands has taken affirmative steps to promote the premise that competing on behalf of the Varsity Defendants was safe, including the creation of coaching and gym classes through "Varsity University," organizing a Varsity safety council, which publicly purported to focus on the threat of sexual abuse to All-star minor participants, and an adult certification process.

22.     At all times relevant to this complaint, Defendant Varsity Spirit, LLC (f/k/a Varsity Spirit Corporation) ("Defendant Varsity Spirit") has been a for-profit

entity organized under the laws of Tennessee with its principal place of business in Memphis, Tennessee. As set forth more fully herein, during the operative timeframe, Defendant Varsity Spirit has been the world's largest purveyor of merchandise, branding, camps, clinics, and competitions for the private All-star cheer industry, encompassing as much as 90% of the industry's gyms, coaches, vendors, and athletes, including in the state of California.

23.     Defendant Varsity Spirit has taken affirmative steps to represent to member minor participants that competing on behalf of a Varsity-affiliated gym would provide athletes with a uniquely safe experience free from sexual abuse.

24.     At all times relevant to this complaint, Defendant Varsity Brands Holding Company, Inc. ("Defendant Varsity Brands Holding") has been a for-profit entity organized under the laws of Texas with its principal place of business in Farmers Branch in Dallas County, Texas.

25.     Defendant Varsity Brands Holding is the corporate parent of Defendant Varsity Brands, and, upon information and belief, at all times relevant to this complaint, exercised a significant degree of control over the daily operations, management, budgeting, staffing, and training for Defendants Varsity Brands and Varsity Spirit, including Defendants' organization, control, and decision making over events, camps, and clinics in California.

26.     Throughout this complaint, Defendants Varsity Spirit, LLC, Varsity Brands, LLC and Varsity Brands Holding Company, Inc., shall be referred to as the "Varsity Defendants". At all times relevant to this Complaint, either directly or through affiliates, including those wholly owned and/or controlled, the Varsity Defendants organized, promoted, produced, and/or managed merchandise, branding, cheer camps, and competitions throughout the United States including California.

27.     Beginning in or around 2003, and at all times relevant to this complaint, Defendant U.S. All Star Federation, Inc. d/b/a U.S. All Star Federation (hereinafter "Defendant USASF") has been a Tennessee non-profit corporation with its principal

place of business in Memphis, Tennessee, and the self-proclaimed governing and regulatory body promulgating and enforcing rules for private All-star cheer, including throughout the state of California. At all times relevant hereto, Defendant USASF has been controlled and funded by the Varsity Defendants.

28. At all times relevant to this Complaint, the Varsity Defendants and Defendant USASF either directly and/or through their affiliates, which they control, have: (a) promulgated and/or enforced rules governing competitive cheer coaching, competitive cheer training, cheer camps and competitions throughout the United States; (b) organized, promoted, produced, and/or managed cheer camps, clinics, and competitions throughout the United States and furthered the goals and purposes of the conspiracy and conduct set forth herein; (c) established guidelines and assessed whether to certify gyms, coaches, and vendors, including without limitation those named herein, as members of USASF, and to otherwise provide "credentials" for these coaches, vendors, and affiliates; and (d) required that athletes, coaches, vendors purchase annual memberships with Defendant USASF and in order to participate in the Varsity Defendants' sanctioned events, and to access USASF member minor athletes.

29. At all times relevant to this complaint, Defendant Jeff Webb ("Defendant Webb") was a citizen of Memphis, Tennessee, and created, owned, operated, and controlled Defendant Varsity Brands, LLC, Defendant Varsity Spirit, LLC, Defendant Varsity Brands Holding Company, Inc., and Defendant USASF.

30. As late as 2021, Defendant Webb publicly acknowledged the role of the leaders in the private All-star cheer universe he created to protect children from abuse.

31. In an interview with Sportico, Webb was quoted as saying that it was "incumbent on [these] leaders to be forever vigilant as far as trying to protect

children," and that "[sexual abuse against children] is a problem and issue for all sports, and cheerleading is no different."[2]

32. This statement regarding the protection of minor participants, was intended to and did encompass all participants throughout the United States, including in California.

33. At all times relevant to this Complaint, Defendant Webb, the Varsity Defendants and Defendant USASF either directly and/or through their affiliates, which they control, have: (a) been responsible for promulgating and/or enforcing rules governing competitive cheer, including coaching, training, cheer camps and competitions throughout the United States; (b) organized, promoted, produced, and/or managed cheer camps and competitions throughout the United States and furthered the goals and purposes of the conduct set forth herein; (c) established guidelines and assessed whether to certify gyms and coaches, including those named herein, as members of USASF and to otherwise provide "credentials" for these members gyms and affiliates; (d) required that athletes, coaches, and clubs purchase annual memberships with Defendant USASF in order to participate in the Varsity Defendants' sanctioned events; and promoted certain gyms and coaches above others, particularly those who were the most lucrative to the Varsity Defendants' network.

34. This Court has jurisdiction over this case because the abuse and subsequent reporting described herein occurred in Ventura County, California and, at all relevant times, Defendants were present in, and/or doing business in Ventura County, California, and were availing themselves of the rights and responsibilities of the laws of California.

---

[2] "A tangled Jeff Webb weaves cheerleading's Olympic dreams," Daniel Libit, September 16, 2021, available at: https://www.sportico.com/personalities/executives/2021/cheerleading-varsity-brands-webb-1234638714/

THE PRIDE LAW FIRM

FIRST AMENDED COMPLAINT
AND DEMAND FOR JURY TRIAL

8

35.    Venue is proper in this Court because the events giving rise to this lawsuit occurred in Ventura County, California.

**TIMELY FILING**

36.    As set forth herein, this complaint alleges causes of action arising under and out of assault and battery perpetrated against Plaintiff while she was a minor under eighteen years of age, and by adults who were agents, employees, and/or authorized representatives of the Defendants, and/or over whom Defendants, including the Varsity Defendants exercised a significant degree of control.

37.    As it relates to the conduct alleged in this complaint, Plaintiff had no opportunity to know of the accruing harm perpetrated by all of the Defendants, including the Varsity Defendants, Defendant Webb, and Defendant USASF, including Defendants' failures to abide by internal policies and procedures related to sexual abuse and misconduct, failing to make or follow through with mandatory reports, failing to undertake appropriate investigations, and failing to enforce and institute rigorous rules against sexual abuse of minor athletes within the Varsity Defendants' network.

38.    Upon information and belief, Defendants took efforts to conceal their failures, or acted with reckless disregard related to timely, effective, appropriate investigation, reporting, follow up and governance, and to generally protect vulnerable athletes including Plaintiff. Defendants' actions made it impossible to know the danger presented, or that Defendants could have prevented that danger.

39.    Plaintiff has further abided by the laws of California related to timely filing as set forth in C.A. Code Section 340.1, and as supported by the Certificate of Merit and Attorney Certificate included as exhibits to the Complaint [Docket Nos. 1 and 3].

40.    As such, Plaintiff's claims are timely by virtue of arising out of assault and battery that occurred while Plaintiff was a minor under the age of eighteen, pursuant to the laws of California, as well as through equitable tolling based upon

Defendants' conduct in concealing violations of or operating with a reckless disregard toward Plaintiff's rights.

## FACTUAL ALLEGATIONS

### Background of All-Star Cheer and Varsity Control

41.     Private All-star cheer is a competitive and dynamic sport where minor participants compete in a team setting, mixing a variety of disciplines including cheer, dance, and tumble.

42.     Because of its historically unregulated nature, All-star cheer is not subject to traditional seasonal limitations, oversight or other restrictions.

43.     As such, All-star cheer requires near constant training, cross-training, frequent competition and clinic participation throughout the year under circumstances controlled entirely by a series of private entities, led by Defendant Jeff Webb and the Varsity Defendants.

44.     In this space of All-star cheer, the Varsity Defendants have emerged as the pre-eminent business.

45.     In 1971, Defendant Webb began his work in cheerleading as an employee at the National Cheerleaders Association working for Lawrence Herkimer, known as the original pioneer of cheer.

46.     In 1974, Defendant Webb left Herkimer and formed his own group, which he named the Universal Cheerleaders Association.

47.     By and through Universal Cheerleaders Association, Defendant Webb grew his footprint in the cheer industry, promoting and showcasing his cheer camps, which grew throughout the 1980s.

48.     During the 1980s, Defendant Webb's cheer camp organization transformed into Defendant Varsity Spirit.

49.     Defendant Varsity Spirit began as a provider of cheer camps and thereafter expanded into competitions, merchandising, branding, social media, and even gym ownership and management.

50. Eventually, Defendant Webb re-branded Varsity Spirit as Defendant Varsity Brands, which included All-star cheer as well as dance.

51. Defendant Varsity Brands remained integrally involved in the daily decision making related to Varsity All-star cheer.

52. In addition, Defendant Jeff Webb remained at the helm both of Varsity Spirit, and of the growing Varsity Brands.

53. By the early 2000's, Defendant Webb took Varsity Brands public, representing the corporation as:

    a. The largest designer, marketer, and supplier of cheerleader dance team uniforms and accessories;

    b. The biggest operator of cheerleading and dance team training camps and clinics;

    c. A leading organizer of special events for extracurricular activities;

    d. A major provider of studio dance conventions and competitions; and

    e. A producer of studio dance apparel for studio dance competitions.[3]

54. As early as 2002, the largest source of revenue for Defendant Varsity Brands came from Defendant Varsity Spirit.

55. Through their various dealings in the cheer industry, the Varsity Defendants have controlled an estimated 80-90% of the market.

56. This domination over the Cheer market includes control over affiliated gyms, who are essentially prohibited from competing in or endorsing any other private event companies.

57. Instead, Varsity - affiliated gyms must abide by the Varsity Defendants' policies, procedures, and guidelines, including the Varsity Defendants' mandate that athletes purchase annual memberships with Defendant USASF.

---

[3] *See* Varsity Brands, Inc., Form 10-K, (Apr. 1, 2002), available at: https://www.sec.gov/Archives/edgar/data/874786/000093041302001124/c23854_10k.txt

FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

58.     A substantial portion of the revenue from each minor participant who cheers for a Varsity-affiliate gym goes directly to the Varsity Defendants.

59.     A single season competing with a Varsity-affiliate gym can, at minimum, cost between $3,000 to $7,000 per team member.

60.     Some families spend $20,000 or more for transportation, lodging, memberships, entrance fees, music fees, choreography expenses, as well as merchandise, uniforms, and other accessories and incidentals, incurred in connection with the numerous competitions and clinics the athletes attend throughout the year.

61.     These competitive events, and clinics, and those adults authorized to train and conduct these events and clinics are subject to the guidance, certification, and rulemaking of Defendant USASF, which was created, controlled, and funded by Defendant Webb and the Varsity Defendants.

62.     Specifically, in or around 2003, in response to the formation of the National All-Star Cheerleading Coaches Congress ("NACCC"), the Varsity Defendants founded Defendant USASF to provide governance and regulatory support for Varsity All-star cheer.

63.     At its inception, Defendant Webb and the Varsity Defendants touted Defendant USASF as the equivalent of a National Governing Body[4] whose responsibility included creating a safe and positive environment for minor child participants, including an environment free from abuse and misconduct.[5]

---

[4] "National Governing Body" refers to an amateur sports organization, high performance management organization, or a paralympic sports organization but is essentially created to provide oversight, governance, and protection against certain misconduct for an identifiable group of individuals.

[5] *See* USASF Athlete Protection & Abuse Prevention Policies, available at: Athlete Protection | USASF ; *see also* Varsity Athlete Protection, available at: Varsity Spirit - Athlete Protection - Varsity.com; with links to Defendant USASF's Athlete Protection and abuse website.

64.     In reality, and as acknowledged by Defendant Webb, Defendant USASF was a further action by the Varsity Defendants to establish monopolistic control over the private All-star cheer industry to the exclusion of other event companies.[6]

65.     After forming Defendant USASF, the Varsity Defendants mandated that All-star minor participants cheering on behalf of Varsity-affiliated gyms purchase annual USASF memberships as a requirement to compete with the Varsity-gym.

66.     Moreover, the Varsity Defendants mandated that gyms, coaches, and adult vendors who wished to interact with these Varsity-affiliated minor participants and to attend Varsity-sponsored events also become members of Defendant USASF.

67.     After forming Defendant USASF, around 2006, the Varsity Defendants created the title "USASF Certified," a USASF seal which denoted that the Varsity Defendants and Defendant USASF warranted a "certified" gym, coach, or adult member had been duly vetted and met Defendants' highest standards regarding safety practices and prevention of minor child abuse.[7]

68.     Upon information and belief, under the instruction of Defendant Webb, the Varsity Defendants and Defendant USASF used this credentialing and certification to signal to parents and athletes that USASF would continually monitor and ensure compliance with minor child safety protections, policies, procedures and protocols by its member gyms, coaches, vendors, and other affiliates.

69.     By 2010, credentialing and certification became paramount to the success of the Varsity network and the managing Defendants.

70.     In a public statement, Defendant USASF represented: "[t]hrough credentialing, coaches are made aware of expectations as teachers and role models.

---

[6] https://www.sportico.com/leagues/other-sports/2021/accused-monopolist-varsity-spirit-1234643664/

[7] For instance, as it relates to USASF's "greenlight determination," USASF represents that "[b]ackground checks are a critical component of any athlete protection program. At USASF, we believe thorough a [sic] background check of all individuals who engage in regular contact with minor athletes is the first step toward protecting those athletes." *See* USASF Directory FAQs for 2022-2023, available at: USASF Member Directory.

It is the goal of the USASF to infuse good decisions into each and every credentialed coach so that they may expand the positive life experience of all-star cheerleading and dance[.]"[8]

71. Defendant Webb and the Varsity Defendants controlled Defendant USASF from inception.

72. The Varsity Defendants created Defendant USASF with a $1.8 million dollar interest free loan and submitted the original trademark application for Defendant USASF.

73. For at least the first fifteen years of its existence, Defendant USASF's offices were located at Defendant Varsity Spirit's corporate headquarters, and a Varsity representative would answer Defendant USASF's phone, and USASF employees were paid directly by the Varsity Defendants and the Varsity Defendants were authorized to cash checks issued to Defendant USASF.

74. In addition, during the operative timeframe of this complaint, the Varsity Defendants controlled Defendant USASF's Board of Directors, which sets policy for Defendant USASF.

75. The Board was composed of thirteen voting members, and as recently as 2022, at least 75% of the voting members have been controlled by the Varsity Defendants or companies controlled by the Varsity Defendants.

76. By creating their own governing and regulatory body (USASF) and mandating that all athletes competing with a Varsity-affiliated gym become members of that governing body, Defendant Webb and the Varsity Defendants ensured their control over every aspect of cheerleading at every level in the United States, including minor participants throughout California such as Plaintiff E.M.

77. Defendant USASF, the so-called independent governing and regulatory body overseeing the Varsity network, purportedly established policies, procedures,

---

[8] The original quote appears in a 2010 edition of Cheer Coach and Advisor Magazine. At the time of publication, Defendant Webb served on the magazine's editorial board.

and guidelines for everything from coaching credentials to boundaries for appropriate and inappropriate conduct.[9]

78.    In addition to these policies, procedures and guidelines, in or around 2009, Defendant USASF also created its Professional Responsibility Code, applicable to all members.

79.    Part of this Code recognized the role of Defendant USASF and more broadly, the Varsity Defendants, in protecting minor participants from grooming, exploitation, harassment or sexual abuse.

80.    For instance, according to this Code, "Once a coach-Athlete relationship is established, a Power imbalance is presumed to exist throughout the coach-Athlete relationship (regardless of age) and is presumed to continue for Minor Athletes after the coach-Athlete relationship terminates until the Athlete reaches 20 years of age."

81.    While this Code stated its goal was to "maximize not only the integrity and legitimacy of the all-star industry, but to safeguard athletes who participate[,]" at the same time, the Code included significant guidelines to prevent movement of minor participants from one Varsity-member gym to another.

82.    For example, as set forth in the Code:

   a. I pledge, as a member of the USASF, I will not initiate contact with another program's athletes and families in an effort to solicit or otherwise entice them to leave the program they belong to and participate in my program. This practice is unethical;

   b. I pledge, as a member of the USASF, I will not encourage any of my athletes or family members to contact another program's athletes and families during the competitive season in an effort to solicit or otherwise entice them to leave the program they belong to and participate in my program. This practice is unethical.

---

[9] USASF Athlete Protection and Abuse Prevention Policies, FN 4.

c.  I pledge, as a member of the USASF, I will honor and encourage everyone to respect all mutual agreements and/or contracts made between parties, whether formal or informal, by programs, coaches and athletes….

*See* USASF Professional Responsibility Code, Version 11.0, Process).

83.  By creating a Professional Responsibility Code requiring members to pledge against internal competition, Defendant USASF essentially guaranteed that gyms would enjoy uninfringed access to athletes and their families and discouraged these athletes and families from reporting potentially dangerous coaches and vendors.

84.  In addition to creating Codes of Conduct and Compliance, Defendant USASF, backstopped by the Varsity Defendants, also undertook investigations into allegations of misconduct within the Varsity network of credentialed coaches and vendors.

85.  As such, when an athlete reported an incident to their gym or a certified coach within their gym, they were directed to Defendant USASF.

86.  Defendant USASF's oversight of the Varsity network was problematic from inception.

87.  In December 2020, USA Today broke a story revealing what it described as USASF's "inherently flawed process" in its oversight role, which allegedly allowed dozens of known sex-offenders to nevertheless access minor participants in Varsity All-star cheer.[10]

88.  In response to these accusations of flawed oversight and inherent conflicts of interest between his Varsity entities and Defendant USASF, Defendant Webb purportedly discounted any potential danger against his minor participants, instead chalking the accusations up to industry jealousy.

---

[10] *See* https://www.sportico.com/leagues/other-sports/2021/accused-monopolist-varsity-spirit-1234643664/

THE PRIDE
LAW FIRM

FIRST AMENDED COMPLAINT
AND DEMAND FOR JURY TRIAL

16

89.     Meanwhile, on December 7, 2020, Defendant USASF announced a universal system for reporting athlete safety concerns, as well as a central repository listing ineligible coaches and individuals. USASF referred to this central repository as the "Uniform Ineligibility List," now known as the "Restricted and Ineligible List."

90.     Defendant USASF stated that these measures "will provide a robust athlete safety infrastructure readily available across the entire cheer community."[11]

91.     As stated in the release: "USASF adult members are required to pass a background screening, complete the U.S. Center for SafeSport Trained course, and follow the USASF Professional Responsibility Code, which establishes principles that guide member conduct and disciplinary consequences for non-compliance."[12]

92.     The combination of these purported safety measures - credentialing, Codes of Conduct and Professional Responsibility, and the Uniform Ineligibility List - all failed to adequately protect young athletes from harm.

93.     In fact, the number of coaches included on the Uniform Ineligibility List has grown to over 230 adults.

94.     Upon information and belief, the failure of Defendant Webb's, the Varsity Defendants', and Defendant USASF's safety practices was not necessarily related to the failure of the written measures themselves, but, instead, a failure of execution, and systemic failures in the culture.

95.     As it relates to the Uniform Ineligibility List, most suspected offenses relate to claims of sexual misconduct between minors and credentialed adults.

---

[11] *See* Press Release December 7, 2020, USA Cheer and U.S. All Star Federation Launch Unified Athlete Safety Infrastructure, available at: USA Cheer & U.S. All Star Federation Launch Unified Athlete Safety Infrastructure (usasfmain.s3.amazonaws.com).

[12] *Id.*

96.     Upon information and belief, many of these credentialed adults passed undetected through the Defendant USASF credentialing process. For example, and according to the 2020 expose in USA Today:

    a.  A Virginia gym owner was convicted of sexual battery and assault and placed on the sex offender registry after three girls he coached at his Virginia gym came forward. As of 2020, this coach was still listed as the gym's owner and was still USASF certified. Varsity continued to invite his gym to competitions. One of his victims had to stop cheering competitively because her convicted abuser was allowed to stay involved around children and in proximity to her.

    b.  A Charlotte coach who was arrested for two counts of sexual assault of a minor and lost his middle school teaching job continued to have access to minor participants afterward. Though the gym's owners claimed he was told he was no longer welcome to work with the gym's athletes after his arrest, he continued to appear in official social media accounts of the gym, was connected by the gym director to parents for private lessons and attended a Varsity event in Florida where he was photographed posing next to the gym's athletes in a gym uniform with the word "Coach" on his shorts.

    c.  A coach who had been fired from a gym and charged with child pornography was discovered to still be working in the cheer industry by the gym owner who had originally fired him. The gym owner called Varsity, who told her his background check was fine. After she went to the courthouse to get the records of his conviction and sent them to Varsity, months passed and the man continued coaching children at Varsity events through USASF gyms.

d. A Washington gym owner was not banned by USASF until more than a year after the organization received reports in 2018 that he had been accused of sexual misconduct with minors.

97.     During the operative timeframe, Defendant USASF refused or failed to report non-member coaches and adults accused of misconduct to law enforcement – contravening its representation that USASF and its members are mandatory reporters.[13]

98.     Upon information and belief, Defendant USASF has received hundreds of complaints against coaches, choreographers, videographers, and others accused of sexual misconduct.

99.     Until recently, however, Defendant USASF failed to dedicate fulltime staff to managing investigations of these complaints.

100.   Ginger Wilczak, the part-time contract employee USASF eventually hired to field reports of misconduct, stated that she worked 10 hours per week at most.[14]

101.   In an interview with Mary Carillo in an HBO Real Sports investigative segment, Ginger Wilczak reported that she had been actively prevented from taking the necessary actions to perform her job.

102.   Defendant USASF has also been slow to develop policies and procedures for keeping minor participants safe from sexual abuse.

103.   Defendant Webb, the Varsity Defendants, and Defendant USASF failed to adequately implement appropriate safety measures to protect minor participants from sexual abuse despite that fact that youth sports organizations such as the

---

[13] *See* USASF Terms and Conditions of Coach Membership, available at: Coach Membership (usasf.net)

[14] https://usatoday.com/in-depth/news/2020/12/23/cheerleading-cheer-sexual-misconduct-complaints-usasf/6484248002/ varsity

Varsity Defendants and USASF have been dogged for decades by allegations of sexual abuse and sexual exploitation of minor children.

104.   As set forth herein, the Varsity Defendants and Defendant USASF failed to execute an operable or legitimate plan to fight the scourge of minor sexual abuse and sexual exploitation within the Varsity network despite knowledge of specific abuse and misconduct within their own organization, as well as knowledge of rampant abuse and misconduct invading other similar youth and youth sports organizations.

105.   Meanwhile, according to its website: "USASF is the U.S. All Star Federation. It's about safety standards. It's about coaches' education. ***It's about providing a safe environment*** to allow for the continued growth of all-star cheerleading and dance across the country. ***It's about parents knowing their children are being taught using safe methods that are in accordance with the standard of care***. It's about standardization of rules from one competition to the next. It's about time." (*Emphasis added*).

106.   Despite this public proclamation however, Defendant USASF's gym and coach training has focused almost exclusively on avoiding physical injury to athletes.

107.   Meanwhile, Defendant USASF was not the only Defendant to make public representations and affirmations about its responsibility to keep minor participants safe.

108.   For example, the Varsity Defendants have publicly represented that Defendant Varsity Brands empowered a Safety Council, to include outside, independent experts, to closely examine and evolve current minor participant safety guidance.

109.   Defendant Varsity Brands directed questions and concerns to safety@varsity.com.

110.  Defendant Varsity Brands also created "Varsity University," which is "an enterprise powered by Varsity Brands, [and which] offers comprehensive educational programming to schools and athletic programs," and consisting of a nine-course program that encompasses three specific areas: Life Skills, Social Media, and Leadership.[15]

111.  Varsity University hosts annual conferences during which the adults are indoctrinated into the Varsity Defendants' culture.

112.  At these conferences, known as Varsity University events, upon information and belief, coaches, gym owners, and vendors are encouraged to drink alcohol and engage in debaucheries, and are inundated with promises of gifts and financial gain if the coaches continue to produce young member-athletes who promote the Varsity brand.

113.  Defendant Varsity Spirit has represented that it provides "training to Varsity Spirit instructors and staff regarding abuse and reporting."[16]

114.  As set forth on its website, "Varsity Spirit enforces its own policies that prohibit abuse and misconduct and are designed to reduce, monitor and govern the areas where potential abuse and misconduct might occur, in addition to the policies implemented by USASF addressing certain types of abuse and misconduct.

115.  The following types of misconduct are specifically prohibited in these policies: (i) sexual abuse and misconduct; (ii) physical abuse and misconduct; (iii) emotional abuse and misconduct; (iv) bullying, threats, and harassment; (v) hazing."[17]

116.  By creating their own internal policies and procedures aimed at mitigating and preventing minor participant sexual abuse, the Varsity Defendants not only undertook such a responsibility, but acknowledge their community-wide

---

[15]Information is available at Varsity University Online Education Programs Athletic Programs & Schools.

[16] *See* Varsity Spirit - Athlete Protection - Varsity.com

[17] *Id.*

responsibility to protect minor participants within the Varsity network from sexual abuse.

117. Defendant Webb has also acknowledged not only the known threat of harm against minor athletes in sports, but that it is the responsibility of the adults in charge to protect those minor participants.[18]

118. At all times relevant to this Complaint, Plaintiff E.M. was one such minor participant.

119. In addition to these affirmative representations related to safety compliance within the Varsity network, Defendant USASF and the Varsity Defendants have also made numerous misrepresentations about their affiliation with the U.S. Center for SafeSport, the Congressionally authorized independent non-profit charged with overseeing National Governing Bodies and other affiliates to prevent minor athlete sexual abuse and misconduct.

120. At no point either during the timeframe relevant to this Complaint or since, have the Varsity Defendants or Defendant USASF actually participated in U.S. Center for SafeSport.

121. Instead, the Varsity Defendants and Defendant USASF created their own version of SafeSport, Safe@allstar, using similar labeling, terminology, and even icons.

122. The choice to continue operating completely independent from any outside oversight at a time when a Congressionally backed alternative existed was a reckless response by Defendant Webb, Defendants USASF and the Varsity Defendants.

123. Moreover, these Defendants intended for parents and minor participants to rely on the public representations about Safe@allstar and its role in fortifying the

---

[18] https://www.sportico.com/personalities/executives/2021/cheerleading-varsity-brands-webb-1234638714/

Varsity network against the risk of grooming, exploitation, harassment, or sexual abuse.

124. Plaintiff E.M. relied on these representations.

125. Outside observers acknowledged the Varsity Defendants' system was fraught with conflicts and pitfalls that favored the Varsity Defendants over participating minor child athletes.

126. John Patterson, a former staffer of the Nonprofit Risk Management Center who consulted on youth sports safety, said he has never heard of an arrangement quite like the one between Defendant Varsity Sprit and Defendant USASF.

127. He said Varsity Spirit, LLC's control of USASF meant, "whatever Varsity wants, Varsity can get" in terms of rules and regulation of the cheer world.

128. According to Jeff Webb, establishing unimpeded control was exactly what he and the Varsity Defendants wanted when they formed Defendant USASF.

129. Les Stella, the former executive director of the International All-Star Federation once recalled that Defendant Webb said the following about founding Defendant USASF: "It wasn't because we wanted some governing body to f-ing tell us what to do. It was our strategy to take over all-star cheerleading. And it f-ing worked too." [19]

130. In 2020, W. Scott Lewis, partner at legal and risk management firm TNG, criticized Defendant USASF's handling of reports and complaints in that they often sat on their hands and did nothing, assuming law enforcement had been contacted by someone else.

131. He said it was not typical for organizations to wait for law enforcement action before taking their own action unless they've explicitly been asked to do so.

---

[19] https://www.sportico.com/leagues/other-sports/2023/varsity-backed-usa-cheer-1234699831/

FIRST AMENDED COMPLAINT
AND DEMAND FOR JURY TRIAL

132.   He said, "You don't want to be on the sideline saying, 'Well, we can't do anything because law enforcement's doing it,'" Lewis said. "You want them to have the ability to engage in interim measures or your own investigation, or both."[20]

133.   At all times relevant to this complaint, and by virtue of the closed network they created, the Varsity Defendants obtained access to minor USASF members, including E.M.

134.   The Varsity Defendants represented to minor child athletes, including E.M., that participation with a USASF Certified gym and certified coaches would provide access to the highest echelon of safety standards in the sport.[21]

135.   Yet, at all times relevant to this Complaint, Defendant Webb, the Varsity Defendants and Defendant USASF knew, or should have known, that the environment created by the Varsity network fostered intimacy between the USASF-minor participants and member coaches who had access to the USASF minor participants.

136.   Moreover, Defendant Webb, the Varsity Defendants, and Defendant USASF, knew or should have known that this continued personal contact between adults and minors posed a risk of sexual abuse of exploitation and a real risk for grooming behavior, and this risk was, at all times relevant to this complaint, well understood.

137.   Defendant Webb, the Varsity Defendants, Defendant USASF, and Defendant Cheerforce, as a participant in the Varsity network, knew or it was foreseeable that the USASF adult member coaches would develop friendships and relationships with minor participants and their families, and that these coaches would thereafter contact these member-athletes including through social media.

---

[20] https://www.sportico.com/leagues/other-sports/2023/varsity-backed-usa-cheer-1234699831/
[21] *See* "Sanctioned Competitions," USASF available at: Sanctioned Competitions - Cheer & Dance | USASF ("When All Star clubs attend USASF Sanctioned Competitions, they can be assured their athletes, coaches, and parents are attending events that comply with the sport's best safety practices.").

THE PRIDE
LAW FIRM

FIRST AMENDED COMPLAINT
AND DEMAND FOR JURY TRIAL

24

138.   During the timeframe of this Complaint, it was foreseeable, and in fact, known that the USASF approved adults would co-mingle with the minor participants including at the gym, during camps, and competitions, and after hours.

139.   At all times relevant to this Complaint, the Varsity network promoted an unparalleled level of access between adults and minor participants within the Varsity network in intimate settings and in intimate scenarios.

140.   Any responsible person or entity should have known that this type of system, which was specifically engineered by Defendant Webb, the Varsity Defendants and Defendant USASF, and implemented by Defendant Cheerforce would foster an environment where abuse and misconduct was likely if not entirely foreseeable.

141.   Any entity participating or allowing such unfettered access was unreasonable, negligent, grossly negligent, and reckless.

142.   In addition, at all times relevant to this complaint, Defendant Cheerforce, Defendant Webb, the Varsity Defendants and Defendant USASF knew or had reason to know that minor athletes were being exposed to drugs and alcohol during training and at times when minor participants and credentialed adults interacted after-hours.

143.   The Varsity Defendants and Defendant USASF have touted the safety and security of their affiliate-gyms, coaches, and vendors, and the Varsity Defendants' competitions, camps, and clinics to lull parents into complacency regarding the safety of their children when cheering for a Varsity-sanctioned gym or with a USASF member adult.

144.   The Varsity Defendants have perpetuated an atmosphere at their member gyms, as well as at camps and competitions, that encourages alcohol and drug use, and inappropriate contact between minor participants and adults, which does not adequately protect minor participants from harm.

145. Meanwhile, Defendant Webb, the Varsity Defendants and Defendant USASF have relied upon access to these children who compete at Varsity-affiliated gyms, and in Varsity competitions, and who further purchase Varsity products, uniforms, and merchandise.

146. Defendant USASF outwardly undertook responsibility for creating and enforcing guidelines, policies, procedures, and processes for protecting Varsity-affiliated minor participants from sexual abuse and for reporting and investigating coaches and other certified adults accused of misconduct.

147. Meanwhile, as designed by Jeff Webb and the Varsity Defendants, they were entirely self-regulated and were not answerable to any independent entity.

148. Athletes and their families, including E.M., understood Defendant USASF was responsible for protecting athletes from harm.

149. The Varsity Defendants, through Defendant USASF, enforced bans of athletes, coaches, vendors, affiliates, and teams in competitions for minor rule infractions like the size of hairbows and the use of glitter.

150. Yet Defendants repeatedly ignored or attempted to avoid disciplinary action against credentialed adults suspected of misconduct with minor participants.

151. During the interim of the allegations set forth in this Complaint related to Plaintiff E.M., the Varsity Defendants, in conjunction with Defendant USASF, have hosted multiple competitive events, and have sponsored or endorsed camps and clinics throughout the United States including in California.

152. In addition, during the relevant timeframe of the Complaint, the Varsity Defendants promoted Defendants Cheerforce, the Herreras, and Miller.

153. Moreover, during the relevant timeframe of the Complaint, Defendant USASF continued to credential and accept membership dues from Defendant Cheerforce, the Herrera Defendants and Defendant Miller.

154.   Defendant Cheerforce and the Varsity Defendants also required Plaintiff E.M. to maintain her membership with Defendant USASF all during the interim of the allegations herein including Defendant Miller's abuse.

155.   Plaintiff's USASF membership should have offered her protection by Defendants USASF, Webb, Cheerforce and the Varsity Defendants against abuse and misconduct by member adults.

156.   Instead, Plaintiff E.M. was a victim of abuse all while continuing to pay her membership dues.

157.   As set forth herein, it was contrary to the Varsity Defendants' business model for Defendant USASF to ban adult members from their system since every adult member represented a pipeline of current and future revenue for the Varsity Defendants.

158.   At all times relevant to this Complaint, Defendant Cheerforce, the Varsity Defendants and Defendant USASF were not appropriately enforcing policies, processes, and procedures related to athlete safety.

159.   Upon information and belief, the policies, processes, failures, and general environment created and perpetuated by Defendant Webb, the Varsity Defendants, and Defendant USASF, fostered and contributed to the sexual, mental, and physical abuse inflicted upon athletes in the Varsity network including Plaintiff E.M.

**The Abuse of Plaintiff E.M.**

160.   As stated herein, at all times relevant to this complaint, Defendant Shawn Miller, Defendant Becky Herrera and Defendant Shawn Herrera were certified members of Defendant USASF and were authorized to interact with and provide coaching services to minor member athletes including Plaintiff.

161.   Plaintiff began participating in All-star cheer when she was around 8 years old.

162.   Beginning in 2005, when she was 15 years old, Plaintiff began cheering at Cheerforce in Simi Valley, California where she was coached by Shawn Miller, an adult male around the age of 24.

163.   Defendant Miller was a talented, prestigious and well-known coach in the All-star cheerleading community.

164.   Beginning in 2005, Defendant Miller began paying special attention to Plaintiff, who he knew was only fifteen years old at the time.

165.   Plaintiff grew to trust and admire Defendant Miller. She looked up to him as a coach, valued his opinion of her performance in her sport and strived to win his approval.

166.   In or around 2005, Defendant Miller began implementing unusual stunt spotting techniques, and unconventional catching positions with Plaintiff, resulting in Defendant Miller touching Plaintiff in an unwanted and inappropriate manner.

167.   Beginning in 2005 and until the time Plaintiff turned eighteen, Defendant Miller's lingering touches eventually progressed to groping, fondling and other unwanted touching.

168.   Defendant Miller knew that Plaintiff was a minor under the age of 18, and that Plaintiff was a USASF member athlete.

169.   Because of her fondness for Defendant Miller, and his position of authority over her, Plaintiff did not feel as though she could speak up about Defendant Miller's abuse to her gym owners, the Herrera Defendants.

170.   The Herrera Defendants helped to create Defendant Miller's authority, as well as the atmosphere that stifled reporting.

171.   Plaintiff even believed that her admiration for Defendant Miller somehow invited or justified Defendant Miller's abusive behavior.

172.   Defendant Miller's abusive behavior continued for years during which time Defendant Miller and others provided Plaintiff with alcohol and illegal drugs, including cocaine and MDMA.

173.   In or around 2008, Defendant Shawn Miller left his employment with Cheerforce and began coaching at another gym in the area. During this time, Defendant Miller was also a licensed realtor, working in the Simi Valley area showing and selling properties.

174.   Plaintiff left Cheerforce in or around 2008 and followed Defendant Miller to the new gym.

175.   Plaintiff's decision to change gyms to continue cheering under the coaching of Defendant Miller was made in large part due to Plaintiff's belief that Defendant Miller's talent and reputation as a premier cheer coach would be beneficial to her in advancing her own cheerleading career.

176.   During this time, Defendant Miller initiated a sexual relationship with Plaintiff, often taking her to his home or vehicle to engage in sexual intercourse.

177.   Despite his knowledge of Plaintiff's status as a USASF member athlete, and despite his position as her coach, on numerous occasions Defendant Miller encouraged and facilitated Plaintiff coming to his home, riding in his SUV, and traveling to properties in Calabasas and Simi Valley to engage in sexual intercourse.

178.   As a licensed realtor, Defendant Miller had unique access to vacant properties that were listed for sale.

179.   In addition to using his position of power over Plaintiff and taking advantage of Plaintiff's fear of reporting his conduct, Defendant Miller used his position as a realtor and unique access to upscale, vacant properties listed for sale to lure Plaintiff to secluded locations where he would engage in sexual intercourse with her.

180.   In addition to using his access to listed properties as an opportunity to engage in sexual activity with Plaintiff, Defendant Miller would also allow Plaintiff and her friends access to these vacant properties.

181.   Defendant Miller would provide Plaintiff, her friends and other minors with alcohol and drugs.

182.   Defendant Miller's sexual abuse of Plaintiff continued for another two years.

183.   Defendant Miller continued to work as a coach in the All-star cheer world for years after abusing Plaintiff.

184.   Following the abuse, Plaintiff began experiencing severe depression, anxiety and panic attacks. She developed an eating disorder and a substance abuse disorder.

185.   Plaintiff sought medical attention, including psychotherapy to address her symptoms, but did not fully appreciate the root cause of her issues.

186.   In or around 2021, while Plaintiff was cheering at the same gym where she cheered under the coaching of Defendant Shawn Miller, she began experiencing severe CPTSD symptoms. It was at this time that Plaintiff disclosed to her current coach the details of Defendant Miller's sexual abuse.

187.   Plaintiff's coach reported the abuse and assisted Plaintiff in beginning the USASF reporting process.

188.   Plaintiff did her best to participate in and cooperate with the USASF investigative and reporting processes, but rather than providing her with a degree of security, the process was deeply traumatizing and unsettling.

189.   For example, during the investigative interviews with USASF investigators, Plaintiff experienced bullying, skepticism, dismissiveness, and a general lack of belief. She was never made aware of any disposition of her report, or any action taken against Defendant Miller as a result of her report.

190.   Years after his sexual abuse of Plaintiff, and after many more years of working with minor athletes in various All-star cheer gyms, Defendant Shawn Miller was ultimately added to the USASF Uniform Ineligibility List, cited only for "Member policy violation related to athlete protection."

191.   His affiliated state is listed as Florida. Upon information and belief, this indicates that another report and not Plaintiff's report may have been the impetus

behind Defendant Miller's ban. As such, multiple people had to come forward to elicit appropriate action from Defendant USASF regarding removing Defendant Miller from its list of eligible coaches.

192.   At all times relevant to this complaint, Defendant USASF, as authorized by the Varsity Defendants was responsible for the oversight and governance of All-star cheer and was further responsible for ensuring the sport was safe and did not unduly expose athletes to the risk of harm, including sexual abuse.

193.   At all times relevant to this complaint, Defendant Shawn Miller, Defendant Becky Herrera, Defendant Shawn Herrera and Defendant Cheerforce were certified members of Defendant USASF, a designation that represented Defendants met All-star standards with respect to safety.

194.   As such, at all times relevant to this complaint, the Varsity Defendants warranted to athletes and families that the certification process was put in place to govern and empower All-star with only those adults who could be trusted to be around children.

195.   At all times relevant to this complaint, Defendants Miller, Herrera and Cheerforce could not have accessed minor USASF athletes without first being members of Defendant USASF.

196.   Moreover, at all times relevant to this complaint, Defendants USASF and the Varsity Defendants represented that Defendants Miller, Herrera and Cheerforce were credentialed members of USASF or authorized by USASF to conduct business, adhering to Defendant USASF's policies and procedures protecting minors, including Plaintiff, from physical, sexual, and mental abuse.

197.   At all times relevant to this complaint, and upon information and belief, Defendant USASF and the Varsity Defendants, allowed, and represented that Defendants Miller, Herrera and Cheerforce were qualified to train, mentor, and otherwise interact with minor athletes, including Plaintiff, and so gave Defendants wide access to minor athletes, including Plaintiff.

FIRST AMENDED COMPLAINT
AND DEMAND FOR JURY TRIAL

198.   Moreover, at all times relevant to this complaint, and upon information and belief, Defendant USASF authorized Defendant Miller, Defendant Becky Herrera and Defendant Shawn Herrera's membership in USASF.

199.   In addition, at all times relevant to this complaint, Defendant USASF and the Varsity Defendants knew, or had reason to know that Defendant Miller was in contact with minor athletes, such as Plaintiff.

200.   During the operative timeframe of this complaint, the Herrera Defendants, Defendant Cheerforce, and Defendant Miller were coaches, owners, mentors, and authorized representatives of Defendants USASF, and the Varsity Defendants, responsible for training and interacting with minor children, including Plaintiff.

201.   At all times relevant to this complaint, Defendants USASF and the Varsity Defendants put the Herrera Defendants, Defendant Cheerforce, and Defendant Miller in positions of particular trust, and represented to the cheer community, including Plaintiff that the community was a safe space for minor athletes.

202.   Yet, at all times relevant to this complaint, Defendant Miller, and by association, the Herrera Defendants, Defendant Cheerforce, and any other affiliated gym, posed a danger to minor athletes such as Plaintiff, including a danger from sexual harassment, exploitation, and abuse.

203.   At all times relevant to this complaint, Defendants Miller, Herrera and Cheerforce remained in lock step with the Varsity Defendants, working as authorized vendors or affiliates of the Varsity Defendants, promoting the Varsity Defendants' sanctioned events, and merchandise, participating in the Varsity University training conferences, and annually renewing their USASF memberships in order to continue their Varsity eligibility.

204.   Meanwhile, the Varsity Defendants, and Defendant USASF knew or should have known of the abuse being perpetrated by their members, such as Defendant Shawn Miller.

205.   At all times relevant to this complaint, Plaintiff was a member of USASF, and paid dues, fees, and other valuable consideration associated with this membership.

## JOINT AND SEVERAL LIABILITY

206.   Defendants are jointly and severally liable for the damages and injuries sustained by Plaintiff, as Defendants' individual and collective actions and omissions actually and proximately caused Plaintiff's past, present, and ongoing injuries. Plaintiff is entitled to damages pursuant to the laws of the State of California and the United States of America, including but not limited to the following:

    a.  Compensatory, actual, and consequential damages;

    b.  Statutory damages;

    c.  Punitive damages;

    d.  Reasonable attorneys' fees and costs;

    e.  Any and all other and further relief as this Court may deem appropriate including pre and post judgment interest.

## COUNT I

### VIOLATION OF THE PROTECTING YOUNG VICTIMS FROM SEXUAL ABUSE ACT, 18 U.S.C. §2255 (ALL DEFENDANTS)

207.   Plaintiff hereby realleges the preceding paragraphs as if repeated verbatim herein.

208.   This claim is brought against all Defendants, with the specific acts complained of performed by Defendants Miller, Herrera and Cheerforce against Plaintiff and enabled by the ongoing certification and ratification of the Varsity Defendants, and Defendant USASF.

209.   Under the statute, a covered individual means an adult who is authorized by a national governing body, a member of a national governing body, or an amateur sports organization that participates in interstate or international amateur athletic competition, to interact with a minor or amateur athlete at an amateur sports organization facility or at any event sanctioned by a national governing body, a member of a national governing body, or such an amateur sports organization.

210.   Under the statute, the term "event" includes travel, lodging, practice, competition, and medical treatment.

211.   Defendants Miller, Herrera and Cheerforce qualify as covered individuals and the facts of this case bear out that abuse occurred at events defined and encompassed by the statute.

212.   Defendants Miller, Herrera and Cheerforce were held out by the Varsity Defendants, and Defendant USASF as being members and part of a safe network of coaches, choreographers, vendors, and other affiliates.

213.   Plaintiff was a minor at the time she was sexually abused and assaulted in contravention of 18 U.S.C. § 2422, thus constituting violations of 18 U.S.C. §2255.

214.   Plaintiff has suffered personal injuries as a result of these violations of law.

215.   Plaintiff is entitled to damages pursuant to the laws of United States of America, including but not limited to the following:

      a. Compensatory, actual, and consequential damages, or, in the alternative, liquidated damages in the amount of $150,000;

      b. Reasonable attorneys' fees and costs;

      c. Punitive damages; and

      d. Any and all other and further relief as this Court may deem appropriate including pre and post judgment interest.

# COUNT II
## GROSS NEGLIGENCE
## (ALL DEFENDANTS)

216.   Plaintiff hereby realleges the preceding paragraphs as though repeated verbatim herein.

217.   Plaintiff brings this claim for gross negligence against all Defendants.

218.   At all times relevant to this Complaint, Defendants have been responsible for the safety, health, and welfare of minor athletes, such as Plaintiff, who was a member of Defendants USASF and a participant in Defendant Varsity events, competing for Varsity-affiliated gyms, and under the care, custody, and control of each of the Defendants, respectively.

219.   At all times relevant to this complaint, Defendant USASF, the Varsity Defendants, and Defendants Miller, Herrera and Cheerforce have represented that credentialing generally, and specifically, provided superior safety for athletes such as Plaintiff, and have promulgated policies, procedures, guidelines, and information about safety in All-star cheer.

220.   At all times relevant to this complaint, Defendants have been aware that there are dangers associated with coaches training minor athletes, including risks associated with inappropriate, and non-consensual sexual touching, emotional, and physical abuse.

221.   At all times relevant to this Complaint, Defendants represented that they had rules, policies and/or procedures specifically intended to address the risks of sexual, physical, and mental exploitation of minor athletes by coaches, and adults who interact with these athletes by virtue of the adults' positions of power. These policies, procedures, rules, and/or guidelines included representations related to SafeSport, and that Defendant USASF was uniquely situated to help govern and regulate All-star cheer.

222.   At all times relevant to this complaint, Defendants have represented that competing in the Varsity system, which is governed by Defendant USASF, is the means to maximize athlete protection for minor athletes such as Plaintiff.

223.   At all times relevant to this complaint, Defendants owed special duties to protect minor children, such as Plaintiff, who was an athlete competing on behalf of a credentialed member club. Plaintiff entrusted Defendants with Plaintiff's physical, mental, and emotional care and well-being, and Defendants held themselves out as being uniquely able to protect minors such as Plaintiff from harm caused by physical or other abuse.

224.   Despite this, at all times relevant to this Complaint, Defendants have been aware that violations to their internal policies, processes, procedures, and guidelines related to athlete safety, and, in particular, safety against harm from sexual, physical, and emotional abuse and exploitation has happened on a regular and continuous basis by and through USASF-certified adult members, including Defendant Miller.

225.   Defendants violated their responsibilities and duties to Plaintiff in one or more of the following particulars:

      a.  Allowing Defendants Miller, Herrera and Cheerforce access to Plaintiff when Defendants knew or reasonably should have known that Defendant Miller posed a threat of harm to Plaintiff;

      b.  Permitting Defendants Miller and Herrera to remain in positions of power and particular trust over minor athletes, such as Plaintiff;

      c.  Allowing Defendant Miller to isolate Plaintiff despite the known dangers associated with one-on-one coaching and interactions;

      d.  Failing to enforce social media and other communications policies and procedures related to inappropriate conduct between minor athletes and adult members;

      e.  Failing to report known instances of abuse or misconduct;

f. Failing to adhere to SafeSport policy or procedure;

g. Failing to investigate potential misconduct, including among and between Defendant Miller and Plaintiff, despite knowledge that such inappropriate contact had occurred;

h. In the event such investigation was conducted, failing to reasonably conduct the investigation for the protection of a minor;

i. Failing to train, supervise, monitor, or implement policies and procedures related to Defendants' employees and/or authorized representatives and their interactions with minors such as Plaintiff;

j. Failing to provide safe premises;

k. Failing to protect Plaintiff from the foreseeable harm inflicted on her by a third party;

l. Continuing to hold Defendants Miller and Herrera out as trustworthy adults capable of providing safe services in the sport; and

m. Such other conduct as may be revealed.

226. At all times relevant to this complaint, Defendants have known that one-on-one coaching, and intimate coach contact is an enhanced feature of All-star coaching that generates a great deal of money for all Defendants in the network.

227. Defendants are also aware of the close personal relationships many of these coaches form with minor athletes who adult members gain access to by virtue of their USASF credentials.

228. Defendants are further aware that, despite the known dangers of one-on-one contact, adult members routinely engage in intimate and exclusive contact with minor athletes, as well as travel with minors across state lines, even staying in the same hotel rooms with no other chaperone, while participating in competitions, camps, and clinics.

229. And when complaints or reports have surfaced, or social media images and videos circulate depicting illegal activity with minors, the Defendants disregard

or ignore same, do not report to any agencies, do not permanently strip coaches of their eligibility, and often rally around coaches who have been accused of illegal conduct with minors, even ostracizing families who have complained or reported.

230.  Defendants' actions and omissions, by and through their authorized agents, were unreasonable, constituted the total absence of care, and breached duties owed to Plaintiff, and actually and proximately contributed to and/or caused damages.

231.  Defendants' actions and omissions as described above, by and through authorized agents, were in violation of Defendants' own policies, procedures, and what would be reasonable under the circumstances.

232.  Each incident of abuse and exploitation detailed in this matter constitutes a separate occurrence.

233.  Plaintiff is entitled to damages pursuant to the laws of California, including but not limiting to the following:

a.  Compensatory, actual, and consequential damages;

b.  Punitive damages; and

c.  Any and all other and further relief as this Court may deem appropriate including pre and post judgment interest.

## COUNT III
### NEGLIGENT SUPERVISION
### (VARSITY DEFENDANTS, DEFENDANT USASF, THE HERRERA DEFENDANTS, AND DEFENDANT CHEER FORCE)

234.  Plaintiff hereby realleges the foregoing paragraphs as though repeated verbatim herein.

235.  Throughout the relevant timeframe of this complaint, Defendant USASF, the Varsity Defendants, the Herrera Defendants, and Defendant Cheerforce continued to employ, credential, and place Defendant Miller in particular and unique positions of trust by allowing access to minor athletes, including Plaintiff.

236. Despite claiming to conduct background checks and remove eligibility certification from coaches, gyms, or adult members where complaints or reports of misconduct have been made, Defendants continued to allow Defendant Miller to operate, manage, and coach for Defendant Cheerforce in order to generate income for the enterprise.

237. Defendants' business model relies upon certifying private gyms, coaches, and adult members pursuant to the USASF standard, which purports to place athlete health and safety above all else.

238. A conflict exists however, in that if a gym, owner, or coach is not certified, they are ineligible to compete in the Varsity network, thus depriving the Varsity Defendants of revenue from that gym and All-star program.

239. Defendant Cheerforce's business model relies upon being an authorized USASF member gym, allowed to contract with and provide services for Defendant USASF's minor athletes.

240. In perpetuating a business model built on trust and athlete safety, Defendants specifically undertook a duty to ensure that reputation for trust and safety was earned and that dangerous individuals committing atrocious illegal acts were removed from the competitive cheer network Defendants oversaw.

241. Defendants breached this duty in a number of particulars including by credentialing Defendant Miller and allowing him to remain in settings with regular access to minor athletes, when Defendants knew or should have known he posed a significant threat of harm, failing to act or otherwise disregarding reports of abuse, discounting or otherwise ignoring specific information about Defendant Miller and his inappropriate interaction with Plaintiff, among other particulars.

242. Defendants' grossly negligent, willful and wanton conduct, set forth more fully herein, directly and proximately caused Plaintiff's injuries.

243. As a direct and proximate result of Defendants' conduct, the Plaintiff has sustained physical, mental, and emotional damages, among others.

244.   Plaintiff is therefore entitled to a judgment against Defendants, and for such actual and consequential damages in an amount to be determined by a jury trial.

## COUNT IV
## ASSAULT/BATTERY
## (DEFENDANT CHEER FORCE, DEFENDANT MILLER)

245.   Plaintiff hereby realleges the foregoing paragraphs as though repeated verbatim herein.

246.   At all times relevant to this complaint, the assault, battery, and abuse set forth herein, occurred while Plaintiff was a minor under eighteen years of age, and while she was a citizen and resident of Ventura County, California.

247.   At all times relevant to this complaint Defendant Cheerforce, as the employer and/or entity responsible for Defendant Miller, allowed an adult coach to access minor athletes including Plaintiff and to illegally commit unwanted and nonconsensual sexual touching of the Plaintiff.

248.   Said touching Defendant Miller constituted sexual assault and sexual battery on this named Plaintiff and others.

249.   As a direct and proximate result of these Defendants' conduct, set forth more expressly above, Plaintiff experienced bodily injury, physical pain and suffering, and mental anguish and is entitled to an award of actual damages in an amount to be determined through a trial of this matter.

## COUNT V
## BREACH OF CONTRACT
## (AS TO THE VARSITY DEFENDANTS, DEFENDANT CHEERFORCE, AND DEFENDANT USASF)

250.   Plaintiff realleges the preceding paragraphs as though repeated verbatim herein.

251.   At all times relevant to this complaint, Plaintiff had duly executed contracts with the Varsity Defendants and Defendant USASF or was the intended third-party beneficiary of contracts between Defendant Cheerforce, and the Varsity Defendants, and Defendant USASF, where, in exchange for valuable consideration

from Plaintiff, Defendants agreed to provide a competitive and gym environment that was safe, secure, and free from harm, specifically physical and sexual abuse.

252.   As set forth herein, during the course of these contractual agreements, Plaintiff was subjected to severe and oppressive abuse, physically and mentally by adults who were credentialed and supported by Defendants, and who Plaintiff would not have come into contact with but for Defendants' network.

253.   During the term of these agreements, the Varsity Defendants, Defendant Cheerforce, and Defendant USASF failed to provide Plaintiff with a safe and secure environment, including by failing to enforce the policies, procedures, and standards expressly adopted by Defendant USASF related to credentialed coaches and adult members.

254.   These failures on the parts of the Varsity Defendants and Defendant USASF constitute violations of the fundamental and material terms of the agreements between Plaintiff, Defendant Cheerforce, and the Varsity Defendants and Defendant USASF.

255.   Defendant Cheerforce, the Varsity Defendants' and Defendant USASF's failures were so egregious and unconscionable as to render the agreements null and void.

256.   As such, Plaintiff seeks an order from this court finding that Defendants' conduct constitutes a breach of the contractual arrangement between Defendants and Plaintiff, rescinding said contracts, and remitting the valuable consideration Plaintiff paid to Defendants during the relevant timeframe, as well as for all such attorneys' fees, costs, and interest to which Plaintiff may be entitled.

## COUNT VI
## UNJUST ENRICHMENT
### (AS TO DEFENDANT CHEER FORCE, THE VARSITY DEFENDANTS)

257.   Plaintiff realleges the preceding paragraphs as though repeated verbatim herein.

258.   As set forth herein, the cheer industry represents a multi-billion-dollar enterprise where each young athlete annually spends thousands of dollars toward gym memberships, private lessons, uniforms, accessories, competition fees, music, choreography, and membership with USASF.

259.   At all times relevant to this complaint, Plaintiff conferred non-gratuitous benefits upon Defendants including annual competition and membership fees, as well as continuous revenue toward uniforms, accessories, private training, and other monetary benefits.

260.   Defendants realized the value of these benefits, including steady annual revenue per athlete.

261.   To date, none of the benefits Defendants realized have been returned or otherwise disgorged.

262.   Under the circumstances set forth herein and above, it would be inequitable for Defendants to retain the benefits conferred by Plaintiff including through Plaintiff's annual membership fees and competition fees.

263.   Plaintiff is therefore entitled as a matter of equity to recover these benefits from Defendants and for all such additional relief as this Court deems proper.

## COUNT VII
### FRAUD
### (AS TO THE VARSITY DEFENDANTS, AND DEFENDANT USASF)

264.   Plaintiff realleges the preceding paragraphs as though repeated verbatim.

265.   At all times relevant to this complaint, Plaintiff was a party to numerous annual contracts whereby Plaintiff agreed to pay Defendants annual and recurring fees in exchange for a safe competitive environment and training facility, and further agreed to pay substantial additional consideration and fees to Defendants.

266.   As part of these agreements, Defendants represented to Plaintiff that Defendants would be responsible for ensuring a safe environment and access to safe

adults for Plaintiff including an environment free from sexual, physical, and mental harm and exploitation.

267.   Defendants' promises were material to Plaintiff's agreements, without which no agreements would have existed.

268.   Plaintiff had a right to rely upon Defendants' promises.

269.   As set forth herein, even at the time they entered into the agreements with Plaintiff, Defendants knew or had a reckless disregard for whether the environment they provided at competitions, in the gym environment, at clinics, and camps, and through certified coaches, was safe and free from harm and sexual, physical and mental abuse.

270.   In fact, at all times relevant to this complaint, Defendants knew that the environment they provided actually facilitated access by predators to underage athletes.

271.   Yet, with knowledge or a reckless disregard for whether Defendants were providing safe environments for child athletes, Defendants nevertheless entered into the agreements and began collecting fees from Plaintiff.

272.   Upon information and belief, Defendants' misrepresentations included, without limitation:

      a. Certifying to Plaintiff that Defendants were responsible for providing safe competitive and training environments;

      b. Certifying to Plaintiff and her family that the adults involved in the gyms, and competitions, including choreographers, had been duly vetted;

      c. Allowing coaches to continue participating and accessing child-athletes even after Defendants knew the coaches had exhibited disturbing behavior;

      d. Facilitating an unchaperoned environment for child-athletes;

e.  Encouraging coaches to create a steady stream of new child athletes for the time that the current athletes aged out;

f.  Failing to provide appropriate security to ensure a safe environment for child athletes free from harm;

g.  Failing to enforce, implement, or abide by policies and procedures related to vetting, security, and screening;

h.  Such additional conduct as may be revealed during discovery and the trial of this case.

273.  As a direct and proximate result of Defendants' conduct, Plaintiff has sustained and will continue to sustain significant mental, physical, and emotional injuries and damages.

274.  Plaintiff now seeks an order from this court setting aside the referenced agreements and declaring them null and void, as well as for damages in an amount to compensate Plaintiff for the physical, psychological and emotional harm caused by Defendants' conduct, as well as punitive damages, and such additional damages in law or equity as this court deems proper.

## **COUNT VIII**
### **NEGLIGENT SECURITY**
### **(AS TO DEFENDANTS USASF, THE VARSITY DEFENDANTS, DEFENDANT CHEER FORCE)**

275.  Plaintiff realleges the preceding paragraphs as though repeated verbatim herein.

276.  At all times relevant to this complaint, the Varsity Defendants, Defendant USASF, and Defendant Cheerforce sponsored, created, hosted, attended and oversaw private all-star gyms, camps, clinics, coaches, choreographers and competitions, all established and governed by Defendants, and under the supervision of Defendants.

277.  At all times relevant to this complaint, if athletes competed at the private all-star gyms, camps, clinics and competitions hosted by the Varsity Defendants, the

athletes had no meaningful choice but to attend at the locations, and under conditions, established by Defendants.

278. At all times relevant to this complaint, these preselected conditions and locations included gym locations.

279. The Varsity Defendants and Defendant Cheerforce received substantial revenue from these events and relationships.

280. At all times relevant to this complaint, the Varsity Defendants, Defendant Cheerforce, and Defendant USASF undertook a responsibility to ensure that the locations and events were safe for minor athletes who were likely to encounter adult coaches, choreographers, videographers, and attendees.

281. The Varsity Defendants, Defendant USASF, and Defendant Cheerforce, violated their responsibility to provide safe premises free from harm from third parties in one or more of the following particulars:

> a. Disparate enforcement of policies, procedures, and guidelines related to suspensions, with the result that coaches were still allowed to attend Varsity Competitions and represent Varsity-affiliated private all-star gyms;

> b. Failure to provide adequate monitoring;

> c. Failure to provide sufficient background checks, with the result that hundreds of potential threats were allowed to gain access to underage athletes;

> d. Failing to monitor, enforce, or otherwise implement policies and procedures to ensure that minor athletes were not exposed to drugs and alcohol, and sexual solicitation and exploitation within the sport;

> e. Failing to monitor, enforce, or otherwise implement policies and procedures to ensure that minor athletes were not exposed to pornographic images, or were not solicited to provide pornographic images while in the course and scope of the sport;

f.     Failing to ensure that Varsity member coaches and adults were not forcing themselves upon minor athletes, including at Varsity member gyms and Varsity events;

g.     Failing to ensure that underage athletes were not being forced into non-consensual sexual encounters with adults affiliated with Defendants;

h.     Such additional conduct as may be revealed during discovery.

282.   As a direct and proximate result of Defendants' conduct, Plaintiff has sustained and will continue to sustain significant mental, physical, and emotional injuries and damages.

283.   Plaintiff now seeks an order from this court setting aside the agreements and declaring them null and void, as well as for damages in an amount to compensate Plaintiff for the physical, psychological and emotional harm caused by Defendants' conduct, as well as punitive damages, and such additional damages in law or equity as this court deems proper.

## COUNT IX
## CIVIL CONSPIRACY
## (AS TO ALL DEFENDANTS)

284.   Plaintiff realleges the preceding paragraphs as though repeated verbatim herein.

285.   At all times relevant to this complaint, Defendants were a collective group of individuals working in concert and individually toward a common plan.

286.   As described more fully herein, Defendants, acting as a collective group and individually, and at all times relevant to this complaint, were engaged in the process of recklessly, intentionally, and willfully endangering the Plaintiff, a minor athlete, by exposing her to sexual abuse and exploitation while assuring her and her family that Defendants were providing safe conditions and premises for the athletes to compete.

287.   As described more fully herein, Defendants' conduct included misleading and fraudulent messaging to children and their families which Defendants knew or should have known would endanger children who were not in a position to discover the danger since Defendants were concealing the danger and failing to report it, acting in reckless indifference to the safety of the children in the name of growing profits.

288.   At all times relevant to this complaint, Defendants were motivated by the substantial revenue, profits, and funding paid by the athletes and their families in exchange for the fraudulent messages and misrepresentations made by Defendants.

289.   The Defendants knew or should have known that inappropriate contact was occurring between coaches and other adults and minor athletes, some of which was even captured on camera, or via messaging, engaging in illegal and inappropriate acts with the minors.

290.   The Defendants owed a duty to minors including Plaintiff, and her family, to make reports, disclose reports, and adequately address reports of inappropriate behavior and sexual relationships with children and to report crimes alleged against them.

291.   The Defendants collectively allowed, endorsed, and financially supported the continuation of these acts against minor athletes.

292.   The Defendants engaged in a scheme to defraud these athletes and their families out of money and property with their artifice and deceit regarding the safety of their programs.

293.   But for the fraudulent assurances to her parents that the gyms, coaches, and member adults were certified safe, the abuse would not have occurred, and Plaintiff would not have suffered continued economic harm derived from paying substantial dues and fees predicated in large part on promises of a safe environment for minor athletes.

294.  As a direct and proximate result of Defendants' conduct, Plaintiff is entitled to damages including but not limited to the following:

    a.  Compensatory, actual, and consequential damages, trebled in accordance with the statute;

    b.  Punitive damages; and

    c.  Any and all other and further relief as this Court may deem appropriate including pre- and post-judgment interest.

**COUNT X**
***RESPONDEAT SUPERIOR***
**(AS TO DEFENDANTS USASF AND CHEER FORCE)**

362.  Plaintiff hereby realleges the foregoing paragraphs as though repeated verbatim herein.

363.  At all times relevant to this complaint, Defendant USASF employed and retained certain individuals, including Amy Clark and Ginger Wiczsak to provide safety and regulatory services, including, without limitation, conducting investigations intended to prevent and mitigate athlete harm in USASF cheer.

364.  At all times relevant to this complaint, agents, employees, and/or authorized representatives of Defendant USASF were acting in the course and scope of their employment.

365.  At all times relevant to this complaint, Defendant Cheerforce employed and retained Defendant Miller as a coach and authorized Defendant's access to minor athletes including Plaintiff.

366.  At all times relevant to this complaint, Defendant Miller was acting in the course and scope of his employment with Defendant Cheerforce, and as an authorized member of Defendant USASF.

367.  As such, at all times relevant to this complaint, Defendants USASF and Cheerforce were responsible for the actions, inactions, omissions and failures of their

employees, agents, and/or representatives as though they undertook the actions themselves.

368. As set forth herein, Defendants failed to properly train, supervise, provide monitoring, and/or to implement the policies, procedures, and guidelines, greatly increasing the likelihood of bodily injury and harm to athletes such as Plaintiff.

369. As set forth herein, Defendant Miller committed sexual battery, non-consensual touching, and inappropriate acts against Plaintiff.

370. As set forth herein, Defendant USASF, by and through its employees, representatives, and/or agents failed to appropriately monitor, report, and implement policies or procedures in All-star cheer, increasing the likelihood of harm against minor athletes, such as Plaintiff.

371. This conduct directly and proximately caused Plaintiff to sustain continuing and ongoing injuries, including physical and emotional damages.

372. Plaintiff therefore seeks an order from this court against Defendants, and is further entitled to actual, consequential, and such additional damages, including punitive damages as this court deems just and proper.

## COUNT XI
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (AS TO ALL DEFENDANTS)

373. Plaintiff realleges the preceding paragraphs as though repeated verbatim herein.

374. As set forth herein and above, at all times relevant to this complaint, Defendants had a duty or duties to Plaintiff to use due and reasonable care to protect Plaintiff from foreseeable harm in a number of particulars, and not to inflict physical, emotional, or psychological injury upon the Plaintiff.

375. As set forth herein and above, Defendants violated their responsibilities to Plaintiff in one or more particulars, including:

a.  Certifying to Plaintiff that Defendants were responsible for providing safe gyms and competitive environments;

b.  Certifying to Plaintiff and her family that the adults involved in the competitions and training, including choreographers, had been duly vetted;

c.  Allowing coaches to continue participating and accessing child-athletes even after Defendants knew the coaches had exhibited disturbing behavior;

d.  Facilitating an unchaperoned environment for child-athletes;

e.  Fostering a party culture for child athletes, including an environment where alcohol and drugs were readily available;

f.  Encouraging coaches to create a steady stream of new child athletes for the time that the current athletes aged out;

g.  Failing to provide appropriate security to ensure a safe environment for child athletes free from harm;

h.  Failing to enforce, implement, or abide by policies and procedures related to vetting, security, and screening;

i.  Disparate enforcement of policies, procedures, and guidelines related to coaching suspensions, with the result that coaches and choreographers were still not permanently banned from interacting with minor athletes;

j.  Failure to provide adequate monitoring at the gyms, camps, events and competitions;

k.  Failure to undertake sufficient background checks;

l.  Failing to monitor, enforce, or otherwise implement policies and procedures to ensure that minor athletes were not exposed to drugs and alcohol;

m.      Failing to monitor, enforce, or otherwise implement policies and procedures to ensure that minor athletes were not exposed to pornographic images, or were not solicited to provide pornographic images while attending Varsity events or cheering for or on the premises of USASF member-gyms;

n.      Exposing minor athletes to potential harmful adults with knowledge or a reckless disregard for the safety of the minor athletes;

o.      Failing to ensure that adult coaches and athletes were not forcing themselves upon minor athletes;

p.      Failing to ensure that underage athletes were not being forced into non-consensual sexual encounters with adults;

q.      Such additional conduct as may be revealed during discovery.

376.    Defendants' conduct set forth above is so outrageous and extreme as to exceed all bounds of that usually tolerated in a civilized community.

377.    Moreover, Defendants' conduct has directly and proximately caused serious, severe, and pervasive emotional and mental injury to Plaintiff and will require reasonably certain future care.

378.    Plaintiff now seeks judgment against Defendants and for damages in an amount to compensate her for the physical, psychological and emotional harm caused by Defendants' conduct, as well as punitive damages, and such additional damages in law or equity as this court deems proper.

## COUNT XII
## VIOLATION OF CALIFORNIA CONSUMERS LEGAL REMEDIES ACT
## CA CIV CODE §1770
## (AS TO THE VARSITY DEFENDANTS, DEFENDANT USASF, AND DEFENDANT CHEER FORCE)

379.    Plaintiff realleges the preceding paragraphs as though repeated verbatim herein.

THE PRIDE
LAW FIRM

FIRST AMENDED COMPLAINT
AND DEMAND FOR JURY TRIAL

51

380.   At all times relevant to this complaint, the above-named Defendants entered into contractual relationships with the Plaintiff and her family, taking fees for membership, training, choreography, competition, and travel, while promising safe environments overseen by vetted adult members of USASF.

381.   The safety and trust touted by these Defendants was material to Defendants' business model, and with the contractual arrangements and relationships entered into between Plaintiff and her family and the Defendants.

382.   The safety and trust referred to herein, which was a material representation by Defendants, caused Plaintiff and her family to pay copious annual fees and dues, as well as fees associated with competition, travel, music, choreography, uniforms, and other monetary assessments, all while Defendants knew or had reason to know that Plaintiff was being subjected to sexual and financial abuse and exploitation.

383.   Defendants failed to implement proper protocols, policies, and/or procedures, or failed to abide by same to ensure the ability of minor children, such as Plaintiff, to be free from sexual and/or physical and emotional harm.

384.   California Civil Code, §1770 prohibits suppliers from committing unfair, deceptive, or unconscionable acts or practices in connection with consumer transactions.

385.   Defendants are "suppliers" as they are engaged in the business of effecting or soliciting consumer transactions, whether or not the person deals directly with the consumer.

386.   Defendants' conduct constitutes deceptive practices in connection with consumer transactions, as evidence by the fact that numerous Plaintiffs, who were minors at the time of the alleged misconduct, have come forward with similar information related to Defendants' conduct, failures, act, and/or omissions in overseeing, enforcing, and providing a secure and safe environment for Plaintiff and other child athletes.

387.   Defendants' unfair and deceptive methods and practices have directly and proximately resulted in harm to Plaintiff, including physical harm, as well as harm related to contractual duties and responsibilities Defendants held themselves out as providing to Plaintiff, and which Defendants neither executed upon nor delivered.

388.   Plaintiff is entitled to damages pursuant to the laws of the State of California, including but not limited to:

    a.   Compensatory, actual, and consequential damages;

    b.   Reasonable attorney's fees and costs;

    c.   Punitive damages where available; and

    d.   Such additional and further relief as this Court may deem appropriate including pre- and post-judgment interest.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court award the following damages, jointly and severally against Defendants, as provided by the laws of the United States and California, including but not limited to the following:

    a.   Compensatory, actual, and consequential damages to Plaintiff, trebled where permitted by statute;

    b.   Alternatively, liquidated damages as to Count I;

    c.   Costs of this action and attorneys' fees to Plaintiff;

    d.   Punitive damages where permitted; and,

    e.   Any and all other and further relief as this Court may deem appropriate.

## **TRIAL BY JURY**

WHEREFORE, Plaintiff hereby demands a trial by jury on all issues so triable.

Respectfully submitted,

Dated: October 4, 2023                  **THE PRIDE LAW FIRM**

/s/ Jessica K. Pride
Jessica K. Pride
Email: jpride@pridelawfirm.com
Attorneys for Plaintiff