**IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
MEMPHIS DIVISION**

| | | |
|---|---|---|
| ARCH INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| VARSITY BRAND HOLDING CO., INC.; | ) | Case No. 2:23-cv-02689-JTF-atc |
| and U.S. ALL STAR FEDERATION, INC. | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANT
VARSITY BRANDS HOLDING CO., LLC'S MOTION TO DISMISS OR STAY**

Defendant Varsity Brands Holding Co., LLC, incorrectly sued herein as Varsity Brands

Holding Co., Inc. ("Varsity Holding"),[1] submits this memorandum of law and facts in support of

its Motion to Dismiss or Stay, which requests that this Court dismiss or stay this action in favor of

the more comprehensive action between the parties pending in Delaware Superior Court.

**I.      INTRODUCTION**

This lawsuit reflects Plaintiff Arch Insurance Company's knowing violation of the parties'

litigation standstill agreement by prematurely filing this declaratory judgment action in a

misguided effort to secure this forum.  The Court should dismiss or, alternatively, stay this action

in favor of the far more comprehensive Delaware state court action that Varsity Holding and its

affiliated insureds have filed against Arch and fourteen other insurers on the same subject matter.

Arch's gamesmanship is self-evident.  In October 2023, Varsity Holding and its affiliates

Varsity Brands, LLC and Varsity Spirit LLC (collectively with Varsity Holding, "Varsity" or the

---

[1] See the accompanying Declaration of David A. Thomas ("Thomas Decl.") ¶¶ 1, 3(a).

"Varsity Insureds") asked Arch and their other insurers to fund a conditional settlement in certain underlying litigation.  To give themselves time to focus on addressing coverage issues rather than racing to the courthouse, Varsity and Arch entered into a standstill agreement that forbade them from suing each other for a three-week period, expiring in the evening of November 3, 2023.

Arch then breached the standstill agreement by filing this action on October 30.  Arch sued only Varsity Holding, and not Varsity Brands or Varsity Spirit.  Arch withheld notifying Varsity until the next day.  The Varsity Insureds cried foul and immediately filed suit that same day in Delaware state court (the "Delaware Action").[2]  Delaware was and is Varsity Brands' state of organization, and it is the state of incorporation of the Varsity Insureds' ultimate members.  The Varsity Insureds soon expanded the Delaware Action to encompass all fifteen of their pertinent insurers.  The Delaware Action remains pending, yet Arch has refused to dismiss this lawsuit.

The Court can and should decline to exercise jurisdiction over this declaratory judgment action in favor of the Delaware Action pursuant to the *Wilton* abstention doctrine[3] in light of the Sixth Circuit's *Grand Trunk* factors.[4]  In contrast to this action's narrow scope, the Delaware Action addresses all of the pertinent underlying claims and includes all of the Varsity Insureds, all of Varsity's insurers (one or more of which are likely to be subject to apportionment of liability with Arch), and all of Varsity's insurance policies, and it includes coercive claims asserted by the Varsity Insureds—the natural plaintiffs.  Co-defendant U.S. All Star Federation, Inc. ("USASF") also is amenable to suit in Delaware.  Moreover, the Varsity Insureds cannot litigate *any*

---

[2] *Varsity Brands Holding Company, Inc., et al. v. Arch Insurance Co., et al.*, Case No. N23C-10-283 MMA CCLD (Del. Super. Ct., New Castle Cnty.).

[3] *See Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995).  Although some courts do not characterize *Wilton*'s principles as "abstention," we use that term as shorthand for *Wilton*'s authorization of district courts to use their discretion to decline to exercise jurisdiction over declaratory judgment actions.

[4] *See Grand Trunk W. R.R. Co. v. Consol. Rail Corp.*, 746 F.2d 323 (6th Cir. 1984).

comprehensive coverage action in this forum because there can be no diversity jurisdiction given another key insurer's Delaware citizenship. Thus, if this case proceeds, there necessarily will be at least two actions involving the same claims and issues, one in federal court and one in state court, posing a risk of inconsistent judicial determinations.

Nor can Arch avoid *Wilton* abstention through assertion of a sham breach of contract claim based on Varsity Holding's alleged breach of the Arch policies' cooperation clauses. Any claim for damages (which is meritless) is available under, and flows from, Arch's declaratory judgment claim. Moreover, an insurer has no cognizable claim for a policyholder's alleged breach of a condition precedent to coverage, at least where, as here, the insurer has not funded any settlement.

This dispute should be settled in a single, comprehensive action—the Delaware Action.

## II.    BACKGROUND

### A.    The Varsity Insureds

The Varsity Insureds are three affiliated entities that, among other things, distribute cheer apparel and organize cheer and dance camps, clinics, and competitions. Thomas Decl. ¶ 2. Varsity Holding—the only Varsity entity named in this action—is an Indiana limited liability company; Varsity Brands is a Delaware limited liability company; and Varsity Spirit is a Tennessee limited liability company. *Id.* ¶ 3. All three Varsity Insureds are citizens of Delaware for purposes of diversity jurisdiction. *See id.*

### B.    The Insurance Policies and Insurance Companies

At issue in the Delaware Action are nearly 60 primary commercial general liability (CGL), umbrella liability, excess general liability, and employment practices liability (EPL) insurance policies covering the Varsity Insureds that were issued by fifteen different insurers, including six primary insurers, covering the time period of 1998 to 2023 (collectively, the "Varsity Policies"). *Id*. ¶¶ 5-6; *id.* Ex. 1 (Del. First Am. Compl.) ¶¶ 27-396. Among the Varsity Policies is a series of

primary CGL policies that Arch issued to Varsity Holding covering the time period of July 31, 2017 to July 31, 2023 (collectively, the "Arch Primary Policies").  *Id.* ¶ 6; *id*. Ex. 1 ¶¶ 139-180; *id*. Ex. 2.  Arch also issued a series of excess liability policies to Varsity Holding during the same time period (together with the Arch Primary Policies, the "Arch Policies").  *Id.* ¶ 6; *id.* Ex. 1 ¶¶ 263-298.  Immediately preceding the Arch Primary Policies is a series of primary CGL policies issued by Greenwich Insurance Co. for the time period of July 31, 2014 through July 31, 2017 (the "Greenwich Policies").  *Id.* ¶ 6; *id.* Ex. 1 ¶¶ 118-138.  Greenwich is a citizen of Delaware.  *Id.* ¶ 6. The primary CGL policies that precede the Greenwich Policies cover 1998 to 2014 and were issued by four other insurers.  *Id.*; *id.* Ex. 1 ¶¶ 29-117.

In the Delaware Action, Varsity contends that insurers that issued umbrella, excess, and EPL policies also are obligated to provide coverage for the underlying claims.  *Id.* ¶ 7; *id.* Ex. 1 ¶¶ 451-460.  These include various umbrella and excess policies issued by Arch and six other insurers for the period of 2006 to 2023.  *Id.* ¶ 7; *id.* Ex. 1 ¶¶ 181-382.  Varsity also is insured under primary and excess EPL policies issued by three insurers.  *Id.* ¶ 7; *id.* Ex. 1 ¶¶ 383-396.

## C.   The Underlying Claims[5]

Beginning in August 2022, attorneys for a number of All Star Cheer athletes announced that they were filing a lawsuit in federal court in South Carolina asserting claims for alleged sexual abuse perpetrated by employees of team-affiliated gyms—not Varsity employees—mostly starting when the claimants were minors.  *Id.* ¶ 8.  The three Varsity Insureds and others, including USASF, were named as defendants.  *Id.*  The plaintiffs in that action and three other similar civil actions filed in the District of South Carolina (collectively, the "South Carolina Federal Actions") allege, among other things, that Varsity created and controlled USASF and the USA Federation for Sport

---

[5] The claims described in this section are collectively referred to as the "Underlying Claims."

Cheering ("USA Cheer"), which purportedly were responsible for regulating All Star Cheer and ensuring a safe environment for young athletes through guidelines, policies, procedures, and processes. *Id.* Ex. 3. According to the plaintiffs in those actions, Varsity, in conjunction with USASF and USA Cheer, hosted multiple competitive events throughout the United States. *Id.* They allege that, among other things, because they suffered abuse on the sites of Varsity-sponsored competitive events and at off-site locations allegedly affiliated with those events, Varsity is liable for their injuries under certain negligence theories. *Id.*

A number of other claimants, represented by the same law firm prosecuting the South Carolina Federal Actions, have asserted similar negligence-based claims against Varsity, including in federal courts in North Carolina, Georgia, Florida, Tennessee,[6] Ohio, and California. *Id.* ¶ 9.

### D.     The Coverage Disputes

As the sexual abuse claims against Varsity were filed starting in 2022, Varsity promptly notified its insurers and requested a defense. *Id.* ¶ 10. Neither Arch nor the five other insurers that issued primary CGL policies over the 25-year timespan (the "Primary CGL Insurers") have satisfied their defense obligations to Varsity. *Id.* A few of the Primary CGL Insurers agreed to defend Varsity but then only as to certain of the Underlying Claims, and in some cases with improper conditions placed upon their funding of the defense. *Id.* These insurers also denied coverage for other claims that Varsity contends triggered coverage under their policies. *Id.* For example, whereas Varsity accurately contended that claims alleging multiple acts of sexual abuse triggered multiple policies, including policies issued by multiple insurers in adjacent policy periods, certain insurers (such as Arch) incorrectly asserted that such claims were subject to the policies' Sexual Abuse and Molestation ("SAM") Endorsement and, therefore, triggered only the

---

[6] These include the case pending before this Court captioned *Mary Doe as next friend of Doe 1, et al. v. Varsity Brands, LLC, et al.*, Case No. 2:22-cv-02657-JTF-tmp (W.D. Tenn.).

policy in effect during the first incident of abuse. *Id.* Other insurers denied coverage altogether. *Id.* Varsity's excess general liability or umbrella insurers reserved rights or denied coverage, and Varsity's EPL insurers also reserved rights. *Id.*

### E. The Mediation, the Standstill Agreement, and the Settlement Demand

In August 2023, the court in the South Carolina Federal Actions ordered that mediation be held and completed by October 13, 2023. *Id.* ¶ 11. Varsity proceeded to mediate with all of the claimants represented by the same law firm, including those filing suit outside of South Carolina, in September and October. *Id.* Most of Varsity's insurers, including Arch, also attended. *Id.*

Despite its dogged efforts, Varsity was unable to secure from its insurers sufficient settlement authority to resolve any of the claims, either individually or collectively. *Id.* ¶ 12. Nevertheless, on October 13, 2023, Varsity sensed it had an opportunity to negotiate a settlement in principle. *Id.* Varsity asked its insurers for their consent to Varsity's engaging in further negotiations. *Id.* As part of this request, Varsity proposed a three-week standstill agreement in which Varsity and its insurers would refrain from filing lawsuits against each other in order to focus on resolving any coverage disputes. *Id.* Varsity stated in an email to Arch:

> To allow us to facilitate settlement negotiations tonight in light of the looming deadlines and the issues that we've discussed throughout the past two days, Varsity has requested the following so that its defense counsel can try to negotiate a settlement tonight: . . . [¶] We agree to a three-week standstill so that we have time to work with each to figure out coverage defenses, and what if, any part of the amounts will be funded by the carriers[.]

*Id.* Ex. 4. Arch's Chief Technical Claims Officer wrote back, "Arch agrees to these terms subject to [certain] additional conditions." *Id.* Varsity responded: "We are in agreement." *Id.*

Having secured Arch's and other pertinent insurers' consent to pursue settlement negotiations, Varsity swiftly reached agreement on a settlement in principle with the claimants, subject to Varsity's having three weeks to obtain funding (the "Settlement Demand"). *Id.* ¶ 14.

The Settlement Demand was reasonable, both collectively and as to the individual claimants.  *Id.*
Varsity promptly informed its insurers of its desire to accept the Settlement Demand and requested approval and funding by November 3, 2023.  *Id.*

Over the next two weeks, Varsity supplied Arch and its other insurers with ample additional information to enable them to evaluate and agree to fund the Settlement Demand.  *Id.* ¶ 15. However, by November 3, Varsity's insurers had refused to fund the Settlement Demand in any adequate amounts.  *Id.*  Varsity thus finalized a settlement agreement with the claimants.  *Id.*

### F.    Relevant Procedural Posture

#### 1.    The Tennessee Federal Action

In the meantime, despite having entered into the standstill agreement, Arch filed this action without forewarning on October 30, 2023, and refrained from notifying Varsity until the next day. In its Complaint, Arch purports to seek "a declaration of its rights and duties under several general liability policies that Arch issued separately to [Varsity Holding] and USASF."  Arch Compl. (ECF 1) ¶ 1.[7]  Arch alleges that a "dispute has arisen between [Varsity Holding], USASF, and Arch over the applicability of the policies to [the Underlying Claims] asserted against [Varsity Holding], its corporate affiliates, and USASF."  *Id.*  Arch also asserts that "[Varsity Holding] has breached its duty of cooperation by failing or refusing to provide Arch with essential information to allow Arch to assess the exposure of the Abuse Lawsuit defendants insured under the [Arch Policies] in a manner that would allow Arch to settle the Abuse Lawsuits."  *Id.* ¶ 149.  Arch seeks a declaration that, among other things, Varsity Holding "has a duty to cooperate with Arch in all Abuse Lawsuits" and that Arch "does not have a duty to indemnify any settlement that [Varsity Holding],

---

[7] For ease of reference, a copy of Arch's Complaint in this action is attached to the Thomas Declaration as Exhibit 5.

the Varsity Defendants, or USASF make without Arch's prior written consent." *Id.* ¶¶ 150, 152. Arch did not name Varsity Brands or Varsity Spirit as defendants even though both were defendants in the Underlying Claims and also were seeking coverage under the Arch Policies, nor did Arch name any of Varsity's other insurers as defendants.

Arch also purports to bring a claim for breach of contract against Varsity Holding with a hodgepodge of dubious allegations that essentially duplicate its declaratory judgment claim. Arch summarily alleges that it "incurred additional costs in excess of $75,000 in an attempt to obtain" some unspecified information from Varsity Holding. *Id.* ¶ 154. Arch further alleges that Varsity Holding "breached its duty to cooperate with Arch so that Arch can exercise its contractual right to settle claims." *Id.* ¶ 158. Arch alleges that, "as a condition for coverage under the Arch Policies," Varsity Holding must obtain Arch's prior written consent to settle any claim or suit. *Id.* ¶ 155. Similarly, Arch alleges that it "does not have a duty to pay for the defense costs that Arch did not approve." *Id.* ¶ 160.

### 2.  The Delaware Action

Upon Arch's notifying Varsity of this action on October 31, 2023, all three Varsity Insureds filed the Delaware Action that day against Arch and, within a few days, expanded the lawsuit to name all fifteen of its pertinent insurers as defendants. Thomas Decl. Ex. 1. The comprehensive Delaware Action involves the nearly 60 Varsity Policies. Varsity asserts breach of contract claims against the Primary CGL Insurers (including Arch) for their failure to defend and indemnify in connection with the Underlying Claims and bad faith claims based on their refusal to settle the Underlying Claims. *Id.* ¶¶ 425-450. As to Arch, Varsity additionally asserts a claim for breach of the standstill agreement. *Id.* ¶¶ 461-470. Varsity also asserts a declaratory judgment claim against all of its insurers to address controversies that will not be resolved by Varsity's breach of contract claims, including the need to allocate liability among the various insurers. *Id.* ¶ 451-460.

A complete resolution of Varsity's claims against Arch—or, for that matter, Varsity's claims against the other insurers, or at least the Primary CGL Insurers—necessarily requires including other insurers as defendants in the same action because of trigger and allocation issues. For example, in the South Carolina Federal Actions, John Doe 2 has alleged abuse potentially spanning the policy periods of certain Greenwich policies and Arch policies, yet Arch has denied coverage on the ground that the "deemer" provision of the SAM Endorsement of its policies precludes coverage. *Id.* ¶ 17. Since the Varsity Insureds need to access policy limits from all available policies to fund the settlement of John Doe 2's claim, they necessarily need to name both Greenwich and Arch as defendants. *Id.* However, none of the Varsity Insureds can sue Greenwich in federal court because all three of them and Greenwich are citizens of Delaware. *Id.* ¶¶ 6, 17.

Defendant USASF also is amenable to suit in Delaware Superior Court. *Id.* ¶ 18. Among other things, USASF purposefully conducts cheer-related activities in Delaware, including listing two member gyms in Delaware on its website. *Id.*; *id.* Exs. 6, 7.

## III.   ARGUMENT

### A.   THE COURT SHOULD DECLINE TO EXERCISE JURISDICTION OVER THIS ACTION IN FAVOR OF THE MORE COMPREHENSIVE DELAWARE ACTION AND SHOULD DISMISS THIS ACTION

As discussed below, the Court should decline to exercise jurisdiction over this action in light of the *Wilton* abstention doctrine and dismiss the action in its entirety.

#### 1.   This Court Has Discretion Under the Declaratory Judgment Act to Decline Jurisdiction Under the *Wilton* Abstention Doctrine

##### a.   *Wilton* Abstention and the *Grand Trunk* Factors

The Federal Declaratory Judgment Act, 28 U.S.C. § 2201(a), does not give a litigant an absolute right to a declaratory judgment. Instead, whether to allow a declaratory judgment action to proceed is within the discretion of the district court, "even when the suit otherwise satisfies

subject matter jurisdictional prerequisites." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995).

Indeed, there is "nothing automatic or obligatory about the assumption of 'jurisdiction' by a federal

court to hear a declaratory judgment action." *Id.* at 288.

In this Circuit, district courts consider the five factors set forth in *Grand Trunk West

Railroad Co. v. Consolidated Rail Corp.*, 746 F.2d 323 (6th Cir. 1984), to determine whether to

exercise jurisdiction over a declaratory judgment action:

(1)     Whether the declaratory action would settle the controversy;

(2)     Whether the declaratory action would serve a useful purpose in clarifying
        the legal relationship in issue;

(3)     Whether the declaratory remedy is being used merely for the purpose of
        "procedural fencing" or "to provide an arena for a race for res judicata";

(4)     Whether the use of a declaratory action would increase friction between our
        federal and state courts and improperly encroach upon state jurisdiction; and

(5)     Whether there is an alternative remedy which is better or more effective.

*Mass. Bay Ins. Co. v. Christian Funeral Dir's, Inc.*, No. 217CV02103JTFCGC, 2018 WL

11475085, at *3 (W.D. Tenn. Feb. 15, 2018) (Fowlkes Jr., J.), *aff'd*, 759 F. App'x 431 (6th Cir.

2018).  There is no specific formula regarding how the *Grand Trunk* factors should be applied or

weighted.  Instead, "the relative weight of the underlying considerations of efficiency, fairness,

and federalism will depend . . . on [the] facts of the case," and a decision of a district court

regarding application of the *Grand Trunk* factors is reviewed for abuse of discretion.  *Admiral Ins.

Co. v. Fire-Dex, LLC,* No. 22-3992, 2023 WL 3963623, at *2 (6th Cir. June 13, 2023).

"[C]ourts in this Circuit have repeatedly held it inappropriate for district courts to entertain

declaratory judgment actions in insurance cases." *Grange Mut. Cas. Co. v. Allen*, No. 13–1295,

2014 WL 7365809, at *2 (W.D. Tenn. Dec. 24, 2014).  This is one such case, as discussed below.

**b.**      **Arch's Phony Breach of Contract Claim Does Not Preclude Application of *Wilton* Abstention**

Before proceeding to evaluation of the *Grand Trunk* factors, it is necessary to dispose of one of Arch's stratagems: its inclusion of a sham breach of contract claim in an attempt to circumvent *Wilton* abstention.  Arch's effort fails.  As discussed in Part III.B below, Arch's breach of contract claim (which also is factually meritless) is not cognizable as a matter of law because it is based on a purported breach of a condition precedent to coverage, namely the policies' cooperation clause.  Thus, if the Court is hesitant about refraining from exercising jurisdiction under *Wilton* abstention, it should dismiss Arch's breach of contract claim pursuant to Fed. R. Civ. P. 12(b)(6) and then decline to exercise jurisdiction over Arch's declaratory judgment claim.

Yet the Court need not even decide whether to dismiss the breach of contract claim because follow-on claims for damages like Arch's do not preclude application of *Wilton* abstention.  Arch's action is manifestly declaratory in nature.   Arch's contract claim turns on one of the central questions presented in its declaratory judgment claim: whether Varsity Holding adequately cooperated with Arch in providing information with respect to the underlying claims.  *Compare* Arch Compl. ¶ 149 *with id.* ¶ 158.   Arch's contract claim, therefore, is not independent, and this Court is not required to retain jurisdiction simply because Arch has purported to tack on a claim for damages.  *See, e.g., Pupp v. Ill. Union Ins. Co.*, No. 1:09-CV-532, 2010 WL 1258179, at *4 (W.D. Mich. Mar. 29, 2010) ("Plaintiff's claims in Counts II and III emanate from the declaratory matter at issue and are not appropriately considered as existing independently of Plaintiff's request for a declaratory relief, such that this Court's jurisdiction is mandatory."); *Principal Life Ins. Co. v. Drs. Vision Ctr. I, PLLC*, No. 5:12-CV-00125-JHM, 2013 WL 1625132, at *4 (W.D. Ky. Apr. 15, 2013) ("Plaintiff's rescission claim is closely intertwined with the declaratory judgment claim, with both claims hinging on the proper interpretation of the subject insurance policy.  Accordingly,

the Court concludes that the discretionary standard of *Wilton* and *Brillhart* applies.").[8]

Indeed, Arch need not request monetary relief in a separate claim because such relief is presumably available under the "further necessary or proper relief" language contained in the Declaratory Judgment Act. *See* 28 U.S.C. § 2202; *see also Royal Indem. Co. v. Apex Oil Co.*, 511 F.3d 788, 793-94 (8th Cir. 2008). Consequently, "a court may still abstain in a case in which a party seeks damages as well as a declaratory judgment so long as the further necessary or proper relief would be based on the court's decree so that the essence of the suit remains a declaratory judgment action." *Royal Indem.*, 511 at 793-94. A contrary result "might encourage abuses, as savvy litigants would recognize that creative pleading of tagalong coercive claims in tandem with declaratory judgment claims was a surefire means of circumventing *Wilton* and preserving a federal forum, notwithstanding parallel state proceedings." *Lexington Ins. Co. v. Rolison*, 434 F. Supp. 2d 1228, 1237 (S.D. Ala. 2006). That is precisely what Arch is trying to accomplish here.

## 2. Application of the *Grand Trunk* Factors Strongly Supports Declination of Jurisdiction

### a. Whether the Federal Action Would Settle the Controversy

The first factor strongly supports declining to exercise jurisdiction because, unlike the Delaware Action, Arch's federal action will not settle the entire controversy regarding coverage for the Underlying Claims. "District courts analyzing the first *Grand Trunk* factor . . . have focused on whether deciding the declaratory action would settle the ultimate controversy." *Southern Mut. Church Ins. Co. v. Faith Deliverance Ctr.*, No. 14-1089, 2014 WL 11514534, at *3 (W.D. Tenn. Nov. 18, 2014). This factor is "much more significant" in cases like Arch's federal

---

[8] The Sixth Circuit does not appear to have established a standard for determining when *Wilton* abstention continues to apply when a claim for damages has been added. But certain authorities provide compelling arguments for applying *Wilton* where, as here, the damages claim emanates from the declaratory judgment claim. *See, e.g.*, *Pupp*, 2010 WL 1258179, at *4 & n.2.

action, where "the federal declaratory judgment action concerns only a small part of . . . the corresponding state court suit or fails to include all of the parties who have a stake in the litigation." *Keiser Land Co. v. Naifeh*, No. 1:09-CV-1253, 2010 WL 3220642, at *3 (W.D. Tenn. Aug. 13, 2010).  Where an insurer's federal declaratory judgment action would not resolve an insurance coverage controversy as to all parties and claims but a parallel state-court coverage action would, "[t]he first *Grand Trunk* factor . . . weighs heavily against the exercise of jurisdiction by the Court." *S. Mut.*, 2014 WL 11514534, at *3.  In addition, the risk of inconsistent rulings with the state court weighs against federal jurisdiction.  *See Grange Mut.*, 2014 WL 7365809, at *4.

The unduly cabined scope of Arch's action is clear.  Here, Arch named only Varsity Holding as a defendant, even though Arch alleges that the other Varsity Insureds (Varsity Brands and Varsity Spirit) also are named in the Underlying Claims and as insureds under the Arch policies and also seek coverage for such claims from Arch.  *See* Arch Compl. ¶¶ 10, 12, 17.  In the Delaware Action, in contrast, all three of the Varsity Insureds are plaintiffs.  In addition, the Delaware Action involves all of the insurance policies potentially implicated by the Underlying Claims and their issuing insurers.  The parties' entire dispute can be heard and resolved in the Delaware Action, whereas only the discrete issues between Arch and Varsity Holding can be addressed here, without comprehensive resolution as to the other two insureds and the other fourteen insurers.  And USASF is amenable to suit in Delaware if necessary.

With the Varsity Insureds, the natural plaintiffs, having filed coercive claims against Arch and their other insurers in the Delaware Action that encompass all of the issues raised by Arch in this action, "the policy reasons underlying the creation of the extraordinary remedy of declaratory judgment are not present, and the use of that remedy is unjustified."  *AmSouth Bank v. Dale,* 386 F.3d 763, 787 (6th Cir. 2004).  In addition, because the Varsity Insureds will be litigating the same

issues against Arch in the Delaware Action, including interpretation of key policy language present in the policies issued by both Arch and the other Primary CGL Insurers, there could be inconsistent judicial determinations if this case proceeds.  *See Grange Mut.*, 2014 WL 7365809, at *4.  Thus, this factor weighs "heavily" in favor of declining jurisdiction.  *S. Mut.*, 2014 WL 11514534, at *3.

### b. Whether the Declaratory Action Would Serve a Useful Purpose in Clarifying the Legal Relationship in Issue

The second *Grand Trunk* factor "is closely related to the first factor and is often considered in connection with it."  *Mass. Bay*, 2018 WL 11475085, at *4; *see also Keiser Land Co.*, 2010 WL 3220642, at *4.  Here, the second factor also weighs against accepting jurisdiction because, unlike the Delaware Action, this action will not clarify all of the legal relationships regarding coverage for the Underlying Claims.

More specifically, as noted above, Arch's declaratory judgment action does not name Varsity Brands or Varsity Spirit as defendants and, thus, will not clarify Arch's legal relationship with them.  *See Keiser Land Co.*, 2010 WL 3220642, at *4 (finding that this factor weighed against the exercise of jurisdiction where the "declaratory judgment would [not] completely resolve the questions as to all parties with a stake in this litigation").  Arch's action is inappropriate too because all it does is assert an affirmative defense to coverage that could be raised in the Delaware Action.  *See Int'l Ass'n of Entrepreneurs v. Angoff*, 58 F.3d 1266, 1270 (8th Cir. 1995) ("[T]he Declaratory Judgment Act is not to be used to bring to the federal courts an affirmative defense which can be asserted in a pending state action.").  In addition, as with the first factor, the possibility of inconsistent rulings calls for declining jurisdiction.  *See Grange Mut.*, 2014 WL 7365809, at *4.

### c. Whether the Declaratory Remedy is Being Used Merely for the Purpose of Procedural Fencing

By filing this action in violation of the standstill agreement and waiting a day to notify the Varsity Insureds, Arch engaged in the sort of "procedural fencing" that the third *Grand Trunk*

factor holds as militating against acceptance of federal jurisdiction.  *See Mass. Bay*, 2018 WL 11475085, at *4.  The Declaratory Judgment Act is not to be used as a "tactical device" in an insurer's attempt to forum-shop.  *See United Ins. Co. of Am. v. Harris*, 939 F. Supp. 1527, 1535 (M.D. Ala. 1996).  To that end, "[t]his factor is meant to preclude jurisdiction for declaratory plaintiffs who file their suits mere days or weeks before the coercive suits filed by a natural plaintiff and who seem to have done so for the purpose of acquiring a favorable forum."  *Keiser Land Co.*, 2010 WL 3220642, at *4 (citations omitted).  As the Sixth Circuit has observed, "[a]llowing declaratory actions in these situations can deter settlement negotiations and encourage races to the courthouse, as potential plaintiffs must file before approaching defendants for settlement negotiations, under pain of a declaratory suit."  *AmSouth Bank*, 386 F.3d at 788.

The Sixth Circuit's *AmSouth Bank* decision illustrates that Arch has engaged in exactly this type of improper procedural fencing.  In *AmSouth Bank*, certain banks entered into tolling agreements with receivers while the parties engaged in settlement discussions.  *Id.* at 770-71.  Prior to the expiration of the tolling agreements, and unbeknownst to the receivers, one of the banks filed its complaint for declaratory relief in federal court.  *Id.* at 771.  The receivers subsequently filed coercive claims in state court upon the expiration of the parties' tolling agreement.  *Id.*  The district court held that the banks did not engage in "procedural fencing," first finding that the receivers "had continuously accused [the bank] for several months before [the bank's] action was brought to secure an adjudication of its rights; then that Tennessee was a logical forum for this dispute; and finally that a controversy was presented by the Receivers' threat of suit."  *Id.* at 789.

The Sixth Circuit reversed the district court's findings as "clearly erroneous," explaining that the presence of a dispute "should have no weight in determining whether a declaratory-judgment action is appropriate" and that "whether the forum chosen by the declaratory plaintiff is

'logical' can have only a minimal value in determining whether procedural fencing has occurred." *Id.* "The question is not which party has chosen the better forum, but whether the declaratory plaintiff has filed in an attempt to get her choice of forum by filing first." *Id.* The Sixth Circuit held that "the practical effect of [the banks'] participation in settlement negotiations and affirmative representations of that participation was to lull the Receivers into believing that amicable negotiation was still possible, and that the filing of these declaratory actions was an effort to engage in procedural fencing to secure the Banks' choice of forum." *Id.* at 790.

Such was the case here. Arch and Varsity entered into the three-week standstill agreement on October 13, 2023, so that they would have "time to work with each [other] to figure out coverage defenses, and what if[] any part of the amounts will be funded by the carriers." Thomas Decl. Ex. 4. Despite its agreement to the contrary, Arch filed this action on October 30, 2023—days before the expiration of the standstill period and after lulling Varsity into believing no suit would be filed at that time. *See Keiser Land Co.*, 2010 WL 3220642, at \*4 ("Frequently, this issue of bad faith arises when the declaratory plaintiff somehow misled the defendant into believing that no declaratory judgment action would be filed, or that settlement negotiations were ongoing."). Arch's procedural fencing thus strongly weighs in favor of declining to exercise jurisdiction.

### d. Whether the Use of a Declaratory Judgment Action Would Increase Friction Between Federal and State Courts and Improperly Encroach Upon State Jurisdiction

The fourth *Grand Trunk* factor considers "whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction." 746 F.2d at 326. The Sixth Circuit has developed three subfactors: "(1) whether the underlying factual issues are important to an informed resolution of the case; (2) whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and (3) whether there is a close nexus between the underlying factual and legal issues and state law and/or

public policy, or whether federal common law or statutory law dictates a resolution of the declaratory judgment action." *S. Mut.*, 2014 WL 11514534, at *5 (quoting *Travelers Indem. Co. v. Bowling Green Prof'l Assocs., PLC*, 495 F.3d 266, 271 (6th Cir. 2007)).

Each of these sub-factors weighs in favor of declining to exercise jurisdiction over Arch's action. The first sub-factor directs that "unless the issue before the federal court is purely an issue of law, a district court should evaluate whether it will be in a position to make unnecessarily duplicative findings of fact that have the potential to conflict with those made by the state court." *Keiser Land Co*., 2010 WL 3220642, at *5. Here, Varsity's Delaware Action asks the court to determine whether Arch (and the other Primary CGL Insurers) unreasonably "insisted on a level of detailed information with respect to the Underlying Actions and Claims that simply does not exist in the context of sexual abuse cases or was not obtainable prior to engaging in formal discovery." Thomas Decl. Ex. 1 ¶ 447. Arch's declaratory judgment claim asks this Court for a determination on essentially the same factual issue. Arch Compl. ¶ 149. Because such a determination of this issue in this action could have a preclusive effect, this sub-factor weighs in favor of declining jurisdiction. *See S. Mut.*, 2014 WL 11514534, at *5.

"The second sub-factor focuses on which court is in a better position to resolve the factual issues related to the declaratory action. States are normally in a better position to resolve insurance coverage issues because insurance companies are regulated by states for the benefit of their citizens. Further, when the insurance company is a party to the state action, and the scope of the coverage is before the state court, a federal court decision on that issue is inappropriate." *Id.* (internal citations omitted). Thus, this sub-factor calls for declining jurisdiction.

Finally, because there is a pending suit in state court that would decide the same issues present in this action, the third sub-factor supports declining jurisdiction. *Keiser Land Co*., 2010

WL 3220642, at *6.  Thus, all three sub-factors call for abstention.

> **e.**   **Whether There Is an Alternative Remedy Which Is Better or More Effective**

The fifth and final factor weighs against assuming jurisdiction.  In evaluating this factor, this Court must analyze whether Arch has "an alternative remedy to filing this declaratory judgment." *Mass. Bay*, 2018 WL 11475085, at *6.  "One such alternative remedy is the ability to file a comparable action in state court." *Keiser Land Co*., 2010 WL 3220642, at *6.  Where the court's decision in the state court action will be more comprehensive than the federal court's decision, this factor weighs against jurisdiction. *See S. Mut.*, 2014 WL 11514534, at *6.

Here, Arch is free to assert its claims in the Delaware Action to the extent it determines there is insufficient overlap with Varsity's pending claims.  *See* 10 Del. C. § 6501 (declaratory relief).  Moreover, as already discussed, the Delaware court's declaratory judgment will be far more comprehensive than the one this Court would issue because the Delaware Action involves the other two Varsity Insureds, a host of other insurance policies, and over a dozen other insurers. *See Lake Effect Inv. Corp. v. Bluso*, No. 1:06 CV 1527, 2007 WL 1231777, at *4 (N.D. Ohio Apr. 25, 2007) ("[T]he state court action involves other involved parties and other overlapping issues and therefore, would lead to a more cohesive and complete review of all of the relevant issues and facts necessary to resolving the full dispute between the parties.").  Indeed, this Court previously held that this factor "weighs against exercising jurisdiction" where the party can file comparable claims in the pending state court action. *Mass. Bay*, 2018 WL 11475085, at *6.

> **B.**   **THE COURT SHOULD DISMISS ARCH'S SHAM BREACH OF CONTRACT CLAIM UNDER FRCP 12(B)(6)**

Arch effectively restates a portion of its declaratory judgment count as a breach of contract claim.  As previously noted, the inclusion of this claim does not prevent this Court from exercising its discretion to decline jurisdiction under *Wilton* abstention.  See Part III.A.1.b above.  However,

to the extent the Court is disinclined to apply *Wilton* abstention while Arch's contract claim is pending, the Court should dismiss the claim pursuant to Fed. R. Civ. P. 12(b)(6) and then decline to exercise jurisdiction over the remaining declaratory judgment claim. *See Phila. Indem. Ins. Co. v. Stebbins Five Cos., Ltd.*, No. 3:02–CV–1279–M, 2002 WL 31875596, at *5-6 (N.D. Tex. Dec. 20, 2002).

Arch's baseless breach of contract claim is not cognizable as a matter of law because it is based on an alleged breach of a condition precedent to coverage, which only gives rise to an affirmative defense to coverage.[9]   The Arch Policies' cooperation clauses, which appear within each of the policies' "CONDITIONS" section, provide that the insureds must "[c]ooperate with us in the investigation or settlement of the claim or defense against the 'suit.'"   *E.g.*, Thomas Decl. Ex. 2, at 3.   Although Varsity does not concede that Tennessee law governs the parties' coverage disputes,[10] it bears noting that "Tennessee courts view clauses requiring such cooperation as conditions precedent to recovering under the policy and hold that a breach of the clause substantially affecting the insurer's interests constitutes a complete defense to liability under the policy."   *Brice v. Auto-Owners Ins. Co.*, No. 2:13-CV-339, 2016 WL 1633025, at *4 (E.D. Tenn. Apr. 21, 2016) (citing *Talley v. State Farm Fire & Cas. Co.*, 223 F.3d 323, 327-28 (6th Cir. 2000)); *see generally* 14 Couch on Ins. § 199:13 (Nov. 2023 Update) (insured's breach of cooperation clause precludes coverage, subject to jurisdiction's requirements for establishing prejudice).   Such a breach furnishes no basis for the insurer to seek affirmative relief, because "[a] condition creates

---

[9] Arch's inclusion of an allegation that it need not pay for unauthorized defense costs incurred by Varsity Holding (Arch Compl. ¶ 160) sounds in declaratory judgment and cannot support a breach of contract claim because Arch did not actually pay these defense costs.

[10] Under Tennessee choice of law rules, Tennessee law would govern the dispute unless there is an actual conflict with respect to a rule of law.  *See Pugh v. Lady Jane's Haircuts for Men Holding Co., LLC*, 660 F. Supp. 3d 712, 719 (M.D. Tenn. 2023).  It is unnecessary to engage in such an analysis for purposes of the discussion here.

no right or duty in and of itself but is merely a limiting or modifying factor . . . ." *German v. Ford*, 300 S.W.3d 692, 703 (Tenn. Ct. App. 2009) (internal quotation marks and citation omitted).

Based on the same principles, courts have found an insurer's assertion of a breach of contract claim based on the policyholder's alleged breach of the policy's cooperation clause to be not just meritless but "frivolous." *Beaufort Dedicated No. 5, Ltd. v. USA Daily Exp., Inc.*, Nos. H–12–1923, H–12–2415, 2012 WL 6608869, at *8 (S.D. Tex. Dec. 18, 2012) (insurer did not state viable breach of contract claim based on breach of cooperation clause; insurer could not seek affirmative relief for breach of cooperation clause because Texas law treated such clauses as conditions precedent to coverage, the breach of which merely relieved insurer from liability); *see also Phila. Indem.*, 2002 WL 31875596, at *6 (as a matter of law, breach of cooperation clause could not support affirmative contract claim by insurer against insured).  So, too, is Arch's claim.

### C.   ALTERNATIVELY, THIS ACTION SHOULD BE STAYED

To the extent this Court concludes that dismissal of this action is unwarranted, whether or not it chooses to dismiss Arch's breach of contract claim pursuant to Fed. R. Civ. P. 12(b)(6) first, Varsity requests that the Court stay this action pending resolution of the Delaware Action.  *See Wilton*, 515 U.S. at 288-90.  Here, the Delaware Action will necessarily be pending and will adjudicate overlapping issues.  Staying this action will avoid inconsistent determinations.

### IV.   CONCLUSION

For the foregoing reasons, Varsity requests that the Court decline to exercise jurisdiction and accordingly dismiss this action in its entirety or, alternatively, stay the action pending disposition of the Delaware Action.  Alternatively, Varsity requests that, to the extent the Court deems it necessary to dispose of Arch's breach of contract claim first, the Court dismiss Arch's contract claim pursuant to Fed. R. Civ. P. 12(b)(6) and then apply *Wilton* abstention to the declaratory judgment claim and dismiss or stay the action until the Delaware Action is resolved.

Dated: February 20, 2024

Respectfully submitted,

/s/ Natasha Romagnoli
Natasha Romagnoli (*pro hac vice*)
BLANK ROME LLP
1271 Avenue of the Americas
New York, NY 10020
(212) 885-5000
Natasha.Romagnoli@BlankRome.com

David A. Thomas (*pro hac vice*)
BLANK ROME LLP
2029 Century Park East, 6th Floor
Los Angeles, CA 90067
(424) 239-3400
David.Thomas@BlankRome.com

Seth Lamden (*pro hac vice*)
Jason Frye (*pro hac vice*)
BLANK ROME LLP
444 West Lake St., Suite 1650
Chicago, IL 60606
(312) 776-2600
Seth.Lamden@BlankRome.com
Jason.Frye@BlankRome.com

Shea Sisk Wellford (TN 16947)
MARTIN, TATE, MORROW & MARSTON, P.C.
International Place, Tower II
6410 Poplar Ave. Ste. 1000
Memphis, TN 38119
(901) 522-9000
sheawellford@martintate.com