# Exhibit 5

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TENNESSEE
## MEMPHIS DIVISON

| | |
|---|---|
| **ARCH INSURANCE COMPANY,** | : |
| | : |
| **Plaintiff,** | : |
| | : |
| v. | :  **Civil Action No.  2:23-CV-02689** |
| | : |
| **VARSITY BRAND HOLDING CO., INC.;** | : |
| **and U.S. ALL STAR FEDERATION, INC.,** | : |
| | : |
| **Defendants.** | : |
| | : |

## COMPLAINT

Arch Insurance Company ("Arch"), by and through its counsel, hereby brings this Complaint against Defendant Varsity Brands Holdings Co., Inc. ("VBH"), and U.S. All Star Federation ("USASF"), and alleges as follows:

## NATURE OF THE CASE

1.     This is an insurance coverage action.  Arch, the insurer, seeks a declaration of its rights and duties under several general liability policies that Arch issued separately to VBH and USASF.  A dispute has arisen between the VBH, USASF, and Arch over the applicability of the policies to third-party claims asserted against VBH, its corporate affiliates, and USASF.  In these claims, athletes who participated in the sport of cheer allege that VBH, USASF and others failed to protect them from sexual abuse that the athletes allegedly suffered at the hands of coaches, choreographers and others affiliated with the sport.

## **THE PARTIES**

2.      Arch Insurance Company is a Missouri corporation with its principal place of business in New Jersey.

3.      Defendant Varsity Brands Holding Co., Inc., is an Indiana corporation with a principal place of business at 14460 Varsity Brands Way, Farmers Branch, Texas 75244.

4.      Defendant U.S. All Star Federation, Inc. is a Tennessee corporation with a principal place of business at 8275 Tournament Drive, Suite 325, Memphis, Tennessee 38125.

## **JURISDICTION AND VENUE**

5.      This Court has subject-matter jurisdiction under 28 U.S.C. § 1332(a) because the dispute is between citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

6.      Venue is proper in this district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claim occurred in this district.

7.      At all relevant times, USASF had been organized under the laws of Tennessee and has maintained its headquarters in Memphis.

8.      VBH is subject to personal jurisdiction in this state because this action arises from contracts of insurance covering persons (including VBH) and property and risks located within this state at the time of contracting.  Tenn. Code § 20-2-214(a)(4).  At the time of contracting, VBH had its headquarters in Memphis, Tennessee, and the Policies were issued to VBH at its Memphis address.  In addition, at all relevant times, VBH owned, rented or occupied multiple locations in the state of Tennessee, from which VBH operated its business.

# FACTS

**D.** **The Underlying Claims**

9. In 2022 and 2023, a number of civil actions were filed by individuals who participated in the sport of cheer, alleging that they were sexually abused by coaches or choreographers (the "Abuse Lawsuits").  The Abuse Lawsuits filed to date include:

    a. *Mary Doe v. Varsity Brands Holding Co.*, W.D. Tenn., Civ. A. No. 2:22-2657 (the "Tennessee Action") (a true and correct copy of the complaint is appended as Exhibit A).

    b. *Jane Doe 1 v. Varsity Brands Holding Co.*, D.S.C., Civ. A. No. 6:22-2957 (a true and correct copy of the complaint is appended as Exhibit B).

    c. *Jane Doe 8 v. Varsity Brands Holding Co.*, D.S.C., Civ. A. No. 6:22-3508 (a true and correct copy of the complaint is appended as Exhibit C).

    d. *Jane Doe 9 v. Varsity Brands Holding Co.*, D.S.C., Civ. A. No. 6:22-3509 (a true and correct copy of the complaint is appended as Exhibit D).

    e. *John Doe 3 v. Varsity Brands Holding Co.*, D.S.C., Civ. A. No. 6:22-3510 (a true and correct copy of the complaint is appended as Exhibit E) (collectively with *Jane Doe 1*, *Jane Doe 8*, and *Jane Doe 9*, the "South Carolina Federal Action").

    f. *John Doe v. Estate of Foster*, Greenville County S.C., No. 2022CP2304753 (the "South Carolina State Action") (a true and correct copy of the complaint is appended as Exhibit F).

    g. *John Doe 1 v. Varsity Brands Holding Co.*, E.D.N.C., Civ. A. No. 5:22-430 (the "North Carolina Action") (a true and correct copy of the complaint is appended as Exhibit G).

    h. *John Doe 1 v. Varsity Brands Holding Co.*, N.D. Ga., Civ. A. No. 1:22-4489 (the "Georgia Action") (a true and correct copy of the amended complaint is appended as Exhibit H).

    i. *Jane Doe 1 v. Varsity Brands Holding Co.*, M.D. Fla., Civ. A. No. 788 (the "Florida Action") (a true and correct copy of the complaint is appended as Exhibit I).

    j. *E.M. v. Varsity Brands Holding Co.*, C.D. Cal., Civ. A. No. 9410 (the "California Action") (a true and correct copy of the amended complaint is appended as Exhibit J).

k. *John Doe 1 v. Varsity Spirit, LLC*, N.D. Ohio, Civ. A. No. 1:23-1960 (the "Ohio Action") (a true and correct copy of the complaint is appended as Exhibit K).

l. *Jane Doe v. Texas Wolverine All-Stars, Inc.*, Bexar Co. Texas Dist. Ct., Cause No. 2022CI19481 (the "Texas Action") (a true and correct copy of the amended complaint is appended as Exhibit L).

m. *Gerlacher v. Cheer Athletics, Inc.*, Travis Co. Texas Dist. Ct., Case No. D-1-GN-21-003338 (the "Gerlacher Action") (a true and correct copy of the complaint is appended as Exhibit M).

10. VBH is a party to all of the actions except the Texas Action, the Gerlacher Action, and the South Carolina State-Court Action. Varsity Spirit, LLC is a party to the South Carolina State-Court Action, and VBH tendered that claim to Arch. USASF is a party to both actions and has sought coverage under Arch Policies issued to VBH and USASF.

11. Upon information and belief, VBH and USASF have received additional claims from other cheer athletes who allege that they were sexually abused under similar circumstances (collectively, with the Abuse Lawsuits, the "Abuse Claims").

12. VBH and USASF are named as defendants in the Abuse Lawsuits. In addition, the Abuse Lawsuits name VBH affiliates Varsity Brands, LLC and Varsity Spirit, LLC as defendants (collectively, "Varsity"), as well as Jeff Webb (allegedly an officer and director of one or more of these Varsity entities) (collectively with Varsity, the "Varsity Defendants"). USA Federation for Sport Cheerleading ("USA Cheer") is presently a defendant in the North Carolina and Georgia actions.

13. True and correct copies of the most recent complaints in the above-referenced lawsuits are appended as Exhibits A through M and incorporated here. Generally, the underlying plaintiffs allege that Varsity controlled USASF; that Varsity and USASF undertook a duty to keep them safe from hazards, including sexual abuse and molestation; that Varsity and USASF required that gym owners, coaches and choreographers be certified by USASF; that Varsity and USASF

promulgated rules that gym owners, coaches and choreographers were required to follow to coach athletes, including minors, and participate in competitions; that Varsity and USASF knowingly, recklessly or negligently failed to enforce these rules; that Varsity and USASF breached their duties to the plaintiffs in hiring, training, investigating, and supervising certain gym owners, coaches and choreographers, and allowing these individuals to continue to provide access to them at gyms and competitions and events sponsored by Varsity and USASF. These plaintiffs further allege that because Varsity and USASF breached their duties to the plaintiffs, certain gym owners, coaches and choreographers sexually abused plaintiffs, in many cases while plaintiffs were minors and below the relevant legal age of consent. In some instances, the plaintiffs allege that because Varsity and USASF breached their duties of care, plaintiffs were allowed to consume illegal drugs or alcohol at competitions, their gyms, or in other cheer-affiliated situations.

14.     The plaintiffs in the Abuse Lawsuits seek damages substantially in excess of $75,000 from Varsity and USASF.

### E.     Policies Issued to VBH

15.     Arch issued Commercial General Liability ("CGL") policies to VBH for successive policy periods from July 31, 2017 through July 31, 2023 and Excess Policies to VBH for successive policy periods from July 31, 2019 through July 31, 2023.

16.     Specifically, Arch issued the following CGL Primary Policies to VBH (collectively, the "Varsity CGL Primary Policies"):

| Policy Number | Policy Period |
|---|---|
| SBCGL0275600 | July 31, 2017 to July 31, 2018 |
| SBCGL0275601 | July 31, 2018 to July 31, 2019 |
| SBCGL0275602 | July 31, 2019 to July 31, 2020 |
| SBCGL0275603 | July 31, 2020 to July 31, 2021 |
| SBCGL0275604 | July 31, 2021 to July 31, 2022 |
| SBCGL0275605 | July 31, 2022 to July 31, 2023 |

17.     The "Named Insureds" under the Varsity CGL Primary Policies include Varsity Brands, LLC and Varsity Spirit, LLC (collectively, with VBH, "Varsity").

18.     USASF is also designated as a Named Insured for the period of July 31 to October 9, 2017 under the Varsity 2017-18 CGL Primary Policy, and under the 2018-19, 2019-20, 2020-21, and 2021-22 CGL Primary Policies.

19.     In general, and subject to their terms, conditions, limitations, and exclusions, each Varsity CGL Primary Policy has an each occurrence limit of $1,000,000 and a general aggregate limit of $5,000,000.

20.     Each Varsity CGL Primary Policy is modified by an abuse and molestation endorsement (the "Sexual Abuse Endorsement"), which—subject to its terms, conditions, limitations, and exclusions—provides sub-limited coverage for sexual abuse with limits of $1,000,000 for each "sexual abuse occurrence" and a $2,000,000 sexual abuse aggregate.

21.     The 2017-18, 2018-19, and 2019-20 Varsity CGL Primary Policies further provide, with respect to Premier Athletics or VBI Ventures DBA's of Varsity Spirit Corporation, that coverage for Premier Athletics and the first named insured for any operations of Premier Athletics under the Sexual Abuse Endorsement is $25,000 each "sexual abuse occurrence" and $50,000 sexual abuse aggregate if a satisfactory background check has not been obtained for a full-time employee, coach or volunteer involved in an abuse or molestation allegation.

22.     Arch also issued the following Excess Policies to VBH (collectively, the "Varsity Excess Policies"):

| Policy Number | Policy Period |
|---------------|---------------|
| SBFXS0124400 | July 31, 2019 to July 31, 2020 |
| SBFXS0124401 | July 31, 2020 to July 31, 2021 |
| SBFXS0124402 | July 31, 2021 to July 31, 2022 |
| SBFXS0124403 | July 31, 2022 to July 31, 2023 |

23.     In general, and subject to their terms, conditions, limitations, and exclusions, each Varsity Excess Policy has an each occurrence limit of $5 million and a general aggregate limit of $5 million.

24.     The 2019-20 and 2020-21 Varsity Excess Policies are modified by a Limited Abuse or Molestation Coverage Endorsement (Sub-Limit), which—subject to its terms, conditions, limitations, and exclusions—provides sub-limited coverage with limits of $1,000,000 for each "act" (as defined) of "abuse or molestation" and $1,000,000 abuse or molestation aggregate.  As discussed further below, the 2021-22 and 2022-23 Varsity Excess Policies have an Abuse or Molestation exclusion.

**F.      Policies Issued to USASF**

25.     Arch issued CGL Policies and Excess Policies to USASF for successive policy periods from October 22, 2017 through October 22, 2023.

26.     Specifically, Arch issued the following CGL Primary Policies to USASF (collectively, the "USASF CGL Primary Policies"):

| Policy Number | Policy Period |
|---|---|
| SBCGL0418200 | October 22, 2017 to October 22, 2018 |
| SBCGL0418201 | October 22, 2018 to October 22, 2019 |
| SBCGL0418202 | October 22, 2019 to October 22, 2020 |
| SBCGL0418203 | October 22, 2020 to October 22, 2021 |
| SBCGL0418204 | October 22, 2021 to November 18, 2022 |
| SBCGL0418205 | November 18, 2022 to October 22, 2023 |

27.     In general, and subject to their terms, conditions, limitations, and exclusions, each USASF CGL Primary Policy has an each occurrence limit of $1,000,000 and a general aggregate limit of $5,000,000.

28.     Each USASF CGL Primary Policy except the 2022-23 Policy is modified by an abuse and molestation endorsement (the "Sexual Abuse Endorsement"), which—subject to its

terms, conditions, limitations, and exclusions—provides sub-limited coverage for sexual abuse with limits of $1,000,000 for each "sexual abuse occurrence" and a $2,000,000 sexual abuse aggregate. The 2022-23 USASF CGL Primary Policy contains an Absolute Abuse or Molestation Exclusion.

29.     Arch also issued the following Excess Policies to USASF (collectively, the "USASF Excess Policies"):

| Policy Number | Policy Period |
|---|---|
| SBFXS0054600 | October 22, 2017 to October 22, 2018 |
| SBFXS0054601 | October 22, 2018 to October 22, 2019 |
| SBFXS0054602 | October 22, 2019 to October 22, 2020 |
| SBFXS0054603 | October 22, 2020 to October 22, 2021 |
| SBFXS0054604 | October 22, 2021 to November 18, 2022 |
| SBFXS0054605 | November 18, 2022 to October 22, 2023 |

30.     In general, and subject to their terms, conditions, limitations, and exclusions, each USASF Excess Policy has an each occurrence limit of $5 million and a general aggregate limit of $5 million, except for the 2017-18 Excess Policy, which has limits of $2 million each occurrence and general aggregate.

31.     The 2018-19, 2019-20 and 2020-21 USASF Excess Policies are modified by a Limited Abuse or Molestation Coverage Endorsement (Sub-Limit), which—subject to its terms, conditions, limitations, and exclusions—provides sub-limited coverage with limits of $2,000,000 for each "act" (as defined) of "abuse or molestation" and $2,000,000 abuse or molestation aggregate. As discussed further below, the 2017-18, 2021-22 and 2022-23 USASF Excess Policies have an Abuse or Molestation exclusion.

**G.     CGL Primary Policy Terms at Issue**

32.     The Varsity CGL Primary Policy and the USASF CGL Primary Policy (the "CGL Primary Policy") share many of the same terms and conditions, and employ the same forms.

33.     Paragraph 1 of Coverage A to the CGL Primary Policy, the Insuring Agreement, states, in part:

   a.     We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. . . .

   b.     This insurance applies to "bodily injury" and "property damage" only if:

      (1)     The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

      (2)     The "bodily injury" or "property damage" occurs during the policy period; and

      (3)     Prior to the policy period, no insured listed under Paragraph **1.** of Section II – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part.  If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

   c.     "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1**. of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

   d.     "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. Of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

      (1)     Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

      (2)     Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

         (3)      Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur. . . .

(A true and correct copy of this CGL Coverage Form is appended as Exhibit N.)

34.      The CGL Primary Policies contain the following definition of an "occurrence":

> "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

35.      As amended by the Commercial General Liability Extension Endorsement to the CGL Primary Policies, "bodily injury" is defined as follows:

> "Bodily injury" means bodily injury, sickness or disease sustained by a person, and includes mental anguish, mental injury, shock or humiliation resulting from these. Except for mental anguish, mental injury, shock or humiliation, "bodily injury" also includes death resulting from such bodily injury, sickness or disease.

(A true and correct copy of this Commercial General Liability Extension Endorsement is appended as Exhibit O.)

36.      The 2017-2018, 2018-19, 2019-20, and 2020-21 CGL Primary Policies are endorsed with a Sexual Abuse Endorsement. (A true and correct copy of this Sexual Abuse Endorsement to the Varsity CGL Primary Policy is appended as Exhibit P.) (A true and correct copy of this Sexual Abuse Endorsement to the USASF CGL Primary Policy is appended as Exhibit Q.)

37.      The Sexual Abuse Endorsement amends Section I – Coverages, Coverage A Bodily Injury and Property Damage Liability, to include the following:

> f.      This insurances applies to "bodily injury" caused by a "sexual abuse occurrence".

38.      The Sexual Abuse Endorsement amends the CGL Primary Policy's definition of "bodily injury" as follows:

"Bodily injury" means bodily injury, mental anguish, shock, mental injury, humiliation, sickness, or disease sustained by a person, including death resulting from any bodily injury, sickness or disease at any time.

"Bodily injury" also includes mental anguish or emotional distress if such mental anguish or emotional distress:

    a.  Directly results from physical contact during a "sexual abuse occurrence"; or

    b.  Directly results from the claimant actually witnessing a "sexual abuse occurrence" whether or not there is physical contact between the claimant and the perpetrator(s).

39.    The Sexual Abuse Endorsement defines a "sexual abuse occurrence" as follows:

"Sexual abuse occurrence" means a single act, or multiple, continuous, sporadic or related acts of sexual molestation or abuse caused by one perpetrator, or by two or more perpetrators acting together.

"Sexual abuse occurrence" includes "negligent employment" of any person accused of or involved in such sexual molestation or abuse. A "sexual abuse occurrence" must occur while the claimant is in the care, custody or control of:

    a.  An insured; or

    b.  A person or entity indemnified under an "insured contract" pursuant to which the Named Insured has legal responsibility for the person or entity.

All acts of "sexual abuse occurrence" by an actual or alleged perpetrator or perpetrators, including "negligent employment" of such perpetrator or perpetrators, shall be deemed and construed as one "occurrence" which takes place when the first act of sexual molestation or abuse occurs, regardless of the number of persons involved, or the number of incidents or locations involved, or the period of time during which the acts of sexual molestation or abuse took place.

No coverage is afforded under this policy if the first act of a "sexual abuse occurrence" took place outside this policy period.

40.    The Sexual Abuse Endorsement defines "negligent employment" as follows:

"Negligent employment" means negligence, or alleged negligence, in the employment, investigation, supervision, training or retention in employment or volunteer status, of any person for whom the

Named Insured is or was ever legally responsible and whose conduct or alleged conduct is within the definition of "sexual abuse occurrence."

41.     The Sexual Abuse Endorsement amends SECTION IV – CONDITIONS to include the following provision:

> 10.     Whenever any officer, director, executive or administrative "employee" of the Named Insured shall acquire knowledge of any "sexual abuse occurrence" either attempted or committed by any other officer, director, "employee", agent, representative, or "volunteer worker" of the Named Insured, the insurance provided under this policy for "bodily injury" caused by "sexual abuse occurrence(s)" shall not apply with respect to any subsequent "sexual abuse occurrence(s)" involving, arising out of, resulting from, or in any way related to, the acts, or omissions of such officer, director, "employee" agent, representative or "volunteer worker".

42.     The 2017-2018, 2018-19, 2019-20, and 2020-21 CGL Primary Policies contain a number of exclusions that bar or limit the coverage available under Coverage A, as amended by the Sexual Abuse Endorsement:

43.     Coverage A insurance does not apply to:

**a.     Expected or Intended Injury**

> "Bodily injury" or "property damage" expected or intended from the standpoint of the insured.  This exclusion does not apply to "bodily injury" or "property damage" resulting from the use of reasonable force to protect persons or property.

**b.     Contractual Liability**

> "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement.  This exclusion does not apply to liability for damages:
>
> (1)     That the insured would have in the absence of the contract or agreement; . . . .

**o.     Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury."

. . .

**q.    Recording And Distribution Of Material Or Information In Violation Of Law**

"Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

(1)    The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

(2)    The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

(3)    The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transactions Act (FACTA); or

(4)    Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

44.    The Sexual Abuse Endorsement to the 2017-2018, 2018-19, 2019-20, and 2020-21 CGL Primary Policies amends Coverage A to state that the insurance does not apply to:

"Bodily injury" by:

(1)    An additional insured, or any person or entity indemnified under any "insured contract", if the "employee(s)", agent(s), representative(s), or "volunteer worker(s)" of such additional insured or indemnified person or entity actually committed, or participated in any respect, in a "sexual abuse occurrence"; or

(2)    Any independent contractor, or the "employees" or agents of such independent contractor; or

(3)    Any person who participated in, directed, or knowingly allowed any "sexual abuse occurrence".

However, this exclusion only applies to those individuals listed above over whom the insured has control.

- 13 -

45.     The CGL Primary Policy defines the term "employee" as follows:

"Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

. . .

"Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

. . .

"Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

46.     The CGL Primary Policy defines the term "volunteer worker" as follows:

"Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

47.     In the 2021-22 and 2022-23 Varsity CGL Primary Policies and the 2021-22 USASF CGL Primary Policy, the Sexual Abuse Endorsement was modified. (A true and correct copy of the modified Sexual Abuse Endorsement to the Varsity CGL Primary Policy is appended as Exhibit R.) (A true and correct copy of the modified Sexual Abuse Endorsement to the USASF CGL Primary Policy is appended as Exhibit S.)

48.     An exclusion is added to Coverage A, which states that the Coverage A insurance does not apply to:

"Bodily injury" or "property damage" based upon, arising out of, or in any way related to a "sexual abuse occurrence".

49.     An exclusion is added to Coverage B, which states that the Coverage B insurance does not apply to:

"Personal and advertising injury" based upon, arising out of, or in any way related to a "sexual abuse occurrence".

50.  The Sexual Abuse Endorsement adds the following coverage:

SEXUAL ABUSE AND MOLESTATION LIABILITY

Insuring Agreement

a.  We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage", or "personal and advertising injury" caused in whole or in part by a "sexual abuse occurrence" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury", "property damage", or "personal and advertising injury" to which this insurance does not apply.  We may, at our discretion, investigate any "sexual abuse occurrence" and settle any claim or "suit" that may result.  But:

(1)  The amount we will pay for damages is limited as described in the schedule of limits above and in SECTION III – LIMITS OF INSURANCE; and

(2)  Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under this Coverage.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS – COVERAGES A, B and SEXUAL ABUSE AND MOLESTATION LIABILITY.

b.  This insurance applies to "bodily injury", "property damage" and "personal and advertising injury" only if:

(1)  The "bodily injury", "property damage" or "personal and advertising injury" is caused by a "sexual abuse occurrence" that takes place in the "coverage territory".

(2)  The "bodily injury", "property damage" or "personal and advertising injury" occurs during the policy period; and

(3)  Prior to the policy period, no insured listed under Paragraph 1. of Section II—Who Is An Insured and no "employee" authorized by you to give or receive notice of a "sexual abuse occurrence" or claim, knew or should have known of a "sexual abuse occurrence".  If such a listed insured or

authorized "employee" knew, prior to the policy period, of a "sexual abuse occurrence", then any continuation, change or resumption of such "sexual abuse occurrence" during or after the policy period will be deemed to have been known prior to the policy period. . . .

51.    The Sexual Abuse and Molestation Liability Insuring Agreement also provides

that:

d.  A "sexual abuse occurrence" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of a "sexual abuse occurrence" or claim:

(1)    Provides notice of all, or any part, of the "sexual abuse occurrence" to us or any other insurer;

(2)    Receives a written or verbal demand or claim for damages because of the "bodily injury", "property damage" or "personal and advertising injury" caused by a "sexual abuse occurrence"; or

(3)    Becomes aware or should have been aware by any other means that a "sexual abuse occurrence" has occurred or has begun to occur.

52.    With respect to Premier Athletics, LLC, the 2021-22 and 2022-23 Varsity CGL

Primary Policies further provide:

D.    It is a condition precedent to coverage under this endorsement for:

a.    An insured in relation to the operations of Premier Athletics, LLC;
b.    Premier Athletics, LLC; and
c.    Premier Athletics, LLC's "employees", coaches, and "volunteer workers",

That Premier Athletics, LLC shall obtain a "satisfactory background check" on its "employees", coaches and "volunteer workers" prior to any "sexual abuse occurrence" that involved such "employees", coaches, or "volunteer workers".

(See Exhibit R.)

53. In the 2021-22 and 2022-23 Varsity CGL Primary Policies and the 2021-22 USASF CGL Primary Policy, the Sexual Abuse Endorsement defines "sexual abuse occurrence" as follows:

> "Sexual abuse occurrence" means a single act or multiple, continuous, sporadic or related acts, whether actual, threatened, or alleged, of sexual molestation or other physical sexual abuse performed by one person, or by two or more persons acting together.
>
> "Sexual abuse occurrence" includes "negligent employment" of any person accused of or involved in such sexual molestation or other physical sexual abuse.
>
> All actual or alleged acts of "sexual abuse occurrence" by one person or by two or more persons acting together, including "negligent employment" of such person(s), shall be deemed and construed as one "sexual abuse occurrence" which takes place when the first act of sexual molestation or other physical sexual abuse occurs, regardless of the number of persons involved, or the number of victims involved, or the number of incidents or locations involved, or the period of time during which the acts of sexual molestation or other physical sexual abuse took place.
>
> No coverage is afforded under this policy if the first act of a "sexual abuse occurrence" took place outside this policy period.

54. The Sexual Abuse Endorsement in the 2021-22 and 2022-23 Varsity CGL Primary Policies defines a "satisfactory background check" as follows:

> "Satisfactory background check" means the performance of an investigation into an individual's past criminal activities which includes the confirmation that there are no convictions of crimes in any way involving minors. Any "satisfactory background check" shall be conducted in accordance with the applicable local, state, and/or federal laws, and must include at a minimum:
>
> a. Sex offender registry check; and
> b. Criminal records search.

55. The Sexual Abuse Endorsement in the 2021-22 and 2022-23 Varsity CGL Primary Policies and the 2021-22 USASF CGL Primary Policy incorporates the exclusions of Coverages A and B, as well as any added to the Policy by endorsement.

56. The Sexual Abuse Endorsement in the 2021-22 and 2022-23 Varsity CGL Primary Policies and the 2021-22 USASF CGL Primary Policy further adds the following exclusions, which state that the Sexual Abuse and Molestation Liability insurance does not apply to:

(a) The liability, including any costs associated with the defense, of:

    1. An additional insured, or any person or entity indemnified under any "insured contract", if the "employee(s)", agent(s), representative(s), vendor, or "volunteer worker(s)" of such additional insured or indemnified person or entity actually or allegedly committed or participated, in any respect, in a "sexual abuse occurrence:' or

    2. Any independent contractor, or the "employees" or agents of such independent contractor;

    3. Any person who actually or allegedly participated in, directed, or knowingly allowed any "sexual abuse occurrence". However, we will afford the defense to which such insured person would otherwise be entitled until such time as:

        a. That person is adjudicated to have participated in, directed or knowingly allowed any "sexual abuse occurrence";

        b. That person admits in any context, including pleading nolo contendere, to having participated in, directed or knowingly allowed any "sexual abuse occurrence"; or

        c. We determine there is sufficient information demonstrating that such person participated in, directed or knowingly allowed any "sexual abuse occurrence".

    4. Any person who failed to report any "sexual abuse occurrence" as required by any applicable federal, state, or local law, ordinance, or regulation. . . .

(d) Criminal and/or civil fines, penalties, punitive damages, exemplary damages or aggravated damages, or any cost or expense paid or incurred in defending against any such fine, penalty, or damages.

(e) Damages or defense costs arising out of any "responsible insured's" failure to report any "sexual abuse occurrence" as required by any applicable federal, state, or local law, ordinance, or regulation.

57.     This Sexual Abuse Endorsement defines a "responsible insured" as follows:

"Responsible insured" means your "executive officer", principal, partner, owner, risk manager or the person(s) responsible for insurance matters.

58.     The Varsity CGL Primary Policies and USASF CGL Primary Policies include

Coverage B.  The Insuring Agreement states, in part:

a.      We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. . . .

b.      This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

(See Exhibit N.)

59.     The CGL Primary Policies define "personal and advertising injury" as follows:

"Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

a.      False arrest, detention or imprisonment;

b.      Malicious prosecution;

c.      The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

d.      Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

e.      Oral or written publication, in any manner, of material that violates a person's right of privacy;

f.      The use of another's advertising idea in your "advertisement"; or

g.      Infringing upon another's copyright, trade dress or slogan in your "advertisement".

60.     The Commercial General Liability Extension Endorsement modifies the definition of "personal and advertising injury," but only "in the event that no other specific coverage for the indicated loss exposures are provided under this policy."  (See Exhibit O.)  In such an event, "personal and advertising injury" also includes the following (with the italicized items added to items b., d., and e. above):

> b.      Malicious prosecution *or abuse of process*;
>
> . . .
>
> d.      Oral, written, *televised or videotaped publication*, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;
>
> e.      Oral, written*, televised or videotaped publication*, in any manner, of material that violates a person's right of privacy;
>
> . . .
>
> h.      Discrimination based on race, color, religion, gender, marital status, sexual orientation or preference, physical or mental condition, age, national origin or other protected class or characteristic established by any federal, state or local statutes, rules or regulations, except when:
>
>> (1)     Done intentionally by or at the direction of, or with the knowledge or consent of:
>>
>>> (a)  Any insured; or
>>>
>>> (b)  Any executive officer, director, stockholder, partner or member of the insured; or . . .
>>
>> (4)     Insurance for such discrimination is prohibited by or held in violation of law, public policy, legislation, court decision or administrative ruling.
>
> The insurance afforded by this paragraph h. does not apply to fines or penalties imposed because of discrimination.

61.     The CGL Primary Policies contain a number of exclusions that bar or limit the coverage available under Coverage B.  Coverage B insurance does not apply to:

**a.**    **Knowing Violation Of Rights Of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

. . .

**d.**    **Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

**e.**    **Contractual Liability**

"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement.  This exclusion does not apply to the following:

(1)    liability for damages that the insured would have in the absence of the contract or agreement; . . . .

**f.**    **Breach of Contract**

"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

**p.**    **Recording And Distribution Of Material Or Information In Violation Of Law**

"Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

(1)    The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

(2)    The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

(3)    The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transactions Act (FACTA); or

(4)    Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the

printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

62.     The Varsity CGL Primary Policies further state that they do not apply to "bodily injury" or "personal and advertising injury"

1.  Arising out of any activity shown in the Schedule that you engage in, organize or sponsor;

2.  Due to rendering of or failure to render any service shown in the Schedule; or

3.  Arising out of "your work" shown in the Schedule.

The Schedule describes the designated activity, services or work as "The normal operations and/or the participants of any/all franchised gyms or health clubs unless the facility is specifically listed in the Schedule of Locations.  However, this exclusion does not apply during the first 90 days after which you newly acquire or form a new Premier Gym.  If a Premier Gym listed in the Schedule of Locations re-locates, this exclusion shall not apply to the new location provided it is reported within 90 days of the move."  (A true and correct copy of this Exclusion – Designated Activity, Service or Work Endorsement to the Varsity CGL Primary Policy is appended as Exhibit T.)

63.     The 2022-23 USASF CGL Primary Policy adds the following Absolute Abuse or Molestation Exclusion to Coverages A and B:

A.  This insurance does not provide coverage to any insured for any damages, including "bodily injury", "property damage" or "personal and advertising injury" arising out of:

1.  The actual, alleged or threatened abuse or molestation, including but not limited to sexual abuse or sexual molestation, of any person committed by anyone; or

2.  The negligent:

a.  Employment;

- 22 -

    b.  Investigation;

    c.  Supervision;

    d.  Reporting to the proper authorities, or failure to so report; or

    e.  Retention;

    of a person for whom any insured is or ever was legally responsible and whose conduct would be excluded by Paragraph 1. above.

  B.  We shall not have any duty to defend any injury or damage alleged in any claim or "suit" that also alleges abuse or molestation, whether such allegation of abuse or molestation is made against you, or by you or by any other party involved in the claim or "suit", regardless of whether this insurance would otherwise apply.

(A true and correct copy of this Absolute Abuse or Molestation Exclusion is appended as Exhibit U.)

### H.    Excess Policy Terms at Issue

64.    The Excess Policies that Arch issued to VBH and USASF each provide that the Excess Policy will follow the same provisions, exclusions and limitations that are contained in the applicable "controlling underlying insurance," unless otherwise directed by the Excess Policy. To the extent that the provisions of the "controlling underlying insurance" differ from the provisions of the Excess Policy, the provisions of the Excess Policy apply. The Excess Policy's coverage is not broader than that provided by the applicable "controlling underlying insurance". (A true and correct copy of this Commercial Excess Liability Coverage Form is appended as Exhibit V.)

65.    As relevant to the Abuse Claims, the "controlling underlying insurance" for each Excess Policy is the CGL Primary Policy issued for the same policy period, as stated in the Declarations to each Excess Policy.

66. The Insuring Agreement of the Excess Policies states, in part:

a. We will pay on behalf of the insured the "ultimate net loss" in excess of the "retained limit" because of "injury or damage" to which insurance provided under this Coverage Part applies.

We will have the right and duty to defend the insured against any suit seeking damages for such "injury or damage" when the applicable limits of "controlling underlying insurance" have been exhausted in accordance with the provisions of such "controlling underlying insurance". . . .

67. The Excess Policies define "ultimate net loss" in relevant part as follows:

"Ultimate net loss" means the total sum, after reduction for recoveries, or salvages collectible, that the insured becomes legally obligated to pay as damages by reason of:

a. Settlements, judgments, binding arbitration; or

b. Other binding alternative dispute resolution proceeding entered into with our consent. . . .

68. The Excess Policies define "retained limit" as the available limits of "controlling underlying insurance" applicable to the claim.

69. The Excess Policies define "injury or damage" as follows:

"Injury or damage" means any injury or damage, covered in the applicable "controlling underlying insurance" arising from an "event".

70. The Excess Policies define an "event" as follows:

"Event" means an occurrence, offense, accident, act, or other event, to which the applicable "controlling underlying insurance" applies.

71. The Excess Policies incorporate the exclusions applicable to any "controlling underlying insurance" unless superseded by the exclusions to the Excess Policy.

72. The 2019-20 and 2020-21 Varsity Excess Policies and the 2018-19, 2019-20, and 2020-21 USASF Excess Policies include a Limited Abuse or Molestation Coverage Endorsement (Sub-Limit) that modifies these Excess Policies. (A true and correct copy of this Endorsement is appended as Exhibit W.)

73. The Limited Abuse or Molestation Coverage Endorsement (Sub-Limit) contains the following exclusion, which states that insurance provided under the Excess Policy Coverage Part does not apply to:

> 1. "Injury or damage" arising out of the actual, alleged or threatened abuse or molestation of any person, persons or organizations; or
>
> 2. "Injury or damage" arising out [of]:
>
>     a. The employment;
>
>     b. Training or supervision;
>
>     c. Investigation;
>
>     d. Reporting, or failure to so report, to the proper authorities;
>
>     e. Retention or reassignment;
>
>     Of a person, persons or organizations:
>
>     (i) Accused or guilty of; or
>
>     (ii) Who had or should have had actual, implied or imputed knowledge of:
>
>         The actual, alleged or threatened abuse or molestation of any person.

74. For the Limited Abuse or Molestation Coverage Endorsement (Sub-Limit), the term "injury or damage" is defined as follow:

> "Injury or damage" means bodily injury, sickness or disease including emotional distress or anguish including death as a result therefrom.

75. The Limited Abuse or Molestation Coverage Endorsement (Sub-Limit) adds an Abuse Or Molestation Coverage Insuring Agreement to the Excess Policy, which states in part:

> a. We will pay on behalf of the insured "ultimate net loss" in excess of the "retained limit" because of "injury or damage" arising out of an act of "abuse or molestation" to which this insurance applies. We will have the right and duty to defend the insured against any suit seeking damages for such "injury or damage" when the applicable limits of "controlling underlying insurance" have been exhausted in

accordance with the provisions of such "controlling underlying insurance". . . .

b.   This insurance applies to "injury or damage" that is subject to an applicable "retained limit".  If any other limit, such as, a sublimit, is specified in the "controlling underlying insurance", this insurance does not apply to "injury or damage" arising out of that exposure unless that limit is specified in the Declarations under the Schedule of "controlling underlying insurance".

c.   This insurance applies only if:

(1)   The "injury or damage" takes place during the policy period and caused by an "abuse or molestation" that takes place in the "coverage territory";

(2)   The first act of "abuse or molestation" takes place during the policy period; and

(3)   Prior to the policy period, no insured and no "employee" authorized by you to give or receive notice of "abuse or molestation" or a claim, knew that the "injury or damage" had taken place, in whole or in part.  If such an insured or authorized "employee" knew, prior to the policy period, that the "injury or damage" occurred, then any continuation, change or resumption of such "injury or damage" during or after the policy period will be deemed to have been known prior to the policy period.

c.   As to each claimant, multiple acts of "abuse or molestation" by the same person(s), as well as any breach of duty allowing or contributing to such act(s), shall collectively be deemed to be one act.  The date of the act shall be deemed to be the date of the first act of "abuse or molestation".  If the date of the event precedes the effective date of this endorsement then any liability with regard to such claimant(s) arising from such act is not covered hereunder.

76.   The Limited Abuse or Molestation Coverage Endorsement (Sub-Limit) defines the term "abuse or molestation" as follows:

"Abuse or Molestation" means:

a.   Each, every and all actual, threatened or alleged acts of physical abuse, sexual abuse or sexual molestation performed by one person or two or more people acting together.  Each, every and all actual, threatened or actual acts of physical abuse, sexual abuse or sexual molestation committed by, participated in by, directed by, instigated by or knowingly allowed to happen by one or more persons shall be considered one "Abuse or Molestation" act regardless of:

       i.      The number of parties;

       ii.     The period of time which the acts of physical abuse, sexual abuse or sexual molestation took place; and

       iii.    The number of such acts or encounters.

"Abuse or Molestation" consisting of or comprising more than one act of physical abuse, sexual abuse or sexual molestation shall be deemed to take place, for all purposes within the scope of this policy, at the time of the first such encounter.

  b.  The negligent:

       i.      Employment;

       ii.     Training or Supervision;

       iii.    Investigation;

       iv.    Reporting to the proper authorities, or failure to so report; or

       v.     Retention or Reassignment;

Of a person for whom any insured is or ever was legally responsible and that engaged in an act of "abuse or molestation" and whose conduct would be included under paragraph **a**. above.

    77.    The Limited Abuse or Molestation Coverage Endorsement (Sub-Limit) has

exclusions, and states that the insurance does not apply to:

    a.  Liability of any person who actually participates in any act of "abuse or molestation".  However, this exclusion does not apply to the victim of the "abuse or molestation" act.

    b.  The cost of defense of or the cost of paying any fines for, any person resulting from criminal prosecution for actual or alleged violation of a criminal or penal statute.

    c.  Any person who has been found guilty of, or pled guilty or no contest to, any criminal act involved in any "abuse or molestation".

    d.  Any liability for or injury to:

       (i)    Any of the insured's "employees" arising out of and in the course of employment by the insured; . . .

This exclusion applies:

    (i)    Whether you may be liable as an employer or in any other capacity; and

    (ii)    To any obligation to share damages with or repay someone else who must pay damages because of the injury.

e.    Any claim for damages which arise out of, result from, involve or in any way relate to acts or omissions of you or your officer(s), director(s), "employee", "volunteer worker", student in training or "contract worker" which takes place subsequent to you or your officer(s) or director(s) acquiring knowledge of any "abuse or molestation" attempted or committed by any other officer, director, "employee", "volunteer worker", student in training or "contract worker" of an insured.

f.    Punitive, exemplary or multiplied damages, fines or penalties.

h.    Restitution or equitable relief, including the return, withdrawal or reduction of professional fees.

78.    The 2021-22 and 2022-23 Varsity Excess Policies and the 2017-18, 2021-22, and 2022-23 USASF Excess Policies exclude coverage for abuse or molestation claims. That exclusion states that the insurance provided under the Excess Policy's Coverage Part does not apply to "injury or damage" arising out of:

a.    The actual or threatened abuse or molestation by anyone of any person while in the care, custody or control of any insured; or

b.    The negligent:

    (1)   Employment;

    (2)  Investigation;

    (3)  Supervision;

    (4)  Reporting to the proper authorities, or failure to so report; or

    (5)  Retention;

of a person for whom any insured is or ever was legally responsible and whose conduct would be excluded by Paragraph **a**. above.

(A true and correct copy of this Abuse or Molestation Exclusion is appended as Exhibit X.)

### I. "Other Insurance" Provisions

79. The CGL Primary Policies and Excess Policies contain "other insurance" clauses in each policy's Conditions, which govern the order in which coverage applies in instances where USASF is entitled to coverage under the Policies issued to VBH, and in instances where Varsity is entitled to coverage under the Policies issued to USASF.

### 1. The CGL Primary Policies

80. The Varsity CGL Primary Policies state:

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

**a.    Primary Insurance**

This insurance is primary except when Paragraph **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph **c.** below.

**b.    Excess Insurance**

**(1)**    This insurance is excess over:

***

**(b)**    Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured.

***

**(2)**    When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those

other insurers.

\*\*\*

**c**.    **Method of Sharing**
If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.  If any of the other insurance does not permit contribution by equal shares, we will contribute by limits.  Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

(See Exhibit N.)

81.    The Varsity CGL Primary Policies further state:

**Primary and Noncontributory Insurance**

This insurance is primary to and will not seek contribution from any other insurance available to an additional insured under your policy provided that:

**(1)**    The additional insured is a Named Insured under such other insurance; and

**(2)**    You have agreed in writing in a contract or agreement that this insurance would be primary and would not seek contribution from any other insurance available to the additional insured.

(A true and correct copy of this Primary and Noncontributory Insurance Endorsement is appended as Exhibit Y.)

82.    The Sexual Abuse Endorsements to the 2021-22 and 2022-23 Varsity CGL Primary Policies replace the "Other Insurance" clause in Condition 4 with the following clause applicable to the Sexual Abuse and Molestation Liability Coverage in those policies:

Coverage under this endorsement shall apply only in excess of any other valid and collectible insurance or bond regardless of whether such other insurance or bond is stated to be excess, contributory, contingent or otherwise, unless such other insurance or bond is written specifically

- 30 -

excess of this endorsement by reference in such other insurance or bond to this endorsement's title.

With respect to SEXUAL ABUSE AND MOLESTATION LIABILITY coverage, the above Condition 4. Other Insurance applies despite any other provision of this policy to the contrary, whether or not by endorsement.

However, this insurance is primary to and will not seek contribution from any other insurance available to an additional insured under your policy provided that:

a.  The additional insured is a Named Insured under such other insurance; and

b.  You have agreed in writing in a contract or agreement that this insurance would be primary and not seek contribution from any other insurance available to the additional insured.

(See Exhibit R.)

83.    The USASF CGL Primary Policies, as modified by the Changes In Other Insurance Condition Endorsement, have the following Other Insurance provision:

If other valid and collectible insurance is available to the insured for a loss we cover under this Coverage Part, this insurance is excess over any other valid and collectible insurance, whether primary, excess, contingent or on any other basis.

(A true and correct copy of this Changes In Other Insurance Condition Endorsement is appended as Exhibit Z.)

### 2.    The Excess Policies

84.    The Varsity Excess Policies and the USASF Excess Policies each include the following Other Insurance provision:

a.  This insurance is excess over, and shall not contribute with any of the other insurance, whether primary, excess, contingent or on any other basis.  This condition will not apply to insurance specifically written as excess over this Coverage Part.

When this insurance is excess, if no other insurer defends, we may undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

b. When this insurance is excess over other insurance, we will pay only our share of the "ultimate net loss" that exceeds the sum of:

(1) The total amount that all such other insurance would pay for the loss in the absence of the insurance provided under this Coverage Part; and

(2) The total of all deductible and self-insured amounts under all that other insurance.

(See Exhibit V.)

85. Under the Policies, VHB, USASF, and all other insureds have a duty to cooperate with Arch in investigating and settling claims, including the Abuse Claims, and in defending against "suits", including the Abuse Lawsuits.

86. The Policies further state that:

No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

## COUNT I
## DECLARATORY JUDGMENT

87. Arch incorporates the averments of the foregoing paragraphs.

88. This is a claim for declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202. Arch seeks a judicial determination of the rights and duties of the parties under the Varsity CGL Primary Policies, the USASF Primary Policies, the Varsity Excess Policies, and the USASF Excess Policies.

89. A real and actual controversy exists between Arch, on the one hand, and VBH and USASF, on the other, concerning whether Arch is obligated to defend or indemnify VBH,

USASF, and other persons who qualified as insureds under the CGL Primary Policies and Excess Policies in the Abuse Lawsuits and Abuse Claims.

90. Arch has provided its written coverage positions, starting in November 2022, on the Abuse Lawsuits and Abuse Claims to VBH and USASF, and has updated its coverage positions as it has received additional information relevant to the coverage analysis.

91. VBH did not dispute Arch's coverage position, except to generally reserve its rights, until October 19, 2023, when it first asserted in general terms that coverage is not limited to coverage under the Sexual Abuse Endorsements but that Varsity is also entitled to coverage under Coverages A and B of the Varsity CGL Primary Policies. Arch disputes this position.

92. All of the Abuse Lawsuits are in early stages of litigation, and discovery either is just beginning or has not yet begun because motions to dismiss are pending.

93. In all of the Abuse Lawsuits and Abuse Claims, the plaintiffs contend that they were sexually abused or molested by a man or men who were employees or agents of Varsity, USASF or another person insured under the Arch Policies issued to VBH or USASF.

94. Arch is entitled to a judicial declaration that, to the extent that any of the Varsity Defendants or USASF is entitled to a defense or indemnity under a CGL Policy, coverage is limited to the coverage available under the Sexual Abuse Endorsement because the allegations qualify as a "sexual abuse occurrence."

95. Arch is entitled to a judicial declaration that the allegations of the Abuse Lawsuits and, upon information and belief, the Abuse Claims constitute allegations of abuse or molestation as the terms "abuse or molestation" are defined or used in the Excess Policies.

96. In the Abuse Lawsuits and, upon information in the Abuse Claims, the plaintiffs allege that Varsity and USASF had a duty to keep plaintiffs safe and breached that duty by

certifying the persons who abused them and failing to properly supervise and investigate the abusers.

97. Arch is entitled to a judicial declaration that the allegations against Varsity and USASF constitute "negligent employment" as that term is defined in the CGL Policies.

98. Alternatively, Arch is entitled to a judicial declaration that, to the extent the allegations directed against the Varsity Defendants and/or USASF do not qualify as "negligent employment," Arch does not have a duty to defend or indemnify the Varsity Defendants and/or USASF under the CGL Policies or Excess Policies.

99. Upon information and belief, the following individuals are alleged to have first committed an act of sexual molestation or abuse before the inception of the first Varsity CGL Primary Policy on July 31, 2017 and the first USASF CGL Policy on October 22, 2017: Scott Foster, Josh Guyton, Traevon Black, Christopher Hinton, Peter Holley, Brandon Hale, Taji Davis, Erick Kristianson, Shawn Miller, Nathan Allen Plank, Kenny Feeley, Shawn Wilson, Marvin Bush, and Jaren Carruba.

100. Arch is entitled to a judicial declaration that all claims alleging acts that meet the definition of a "sexual abuse occurrence" in which Scott Foster, Josh Guyton, Traevon Black, Christopher Hinton, Peter Holley, Brandon Hale, Taji Davis, Erick Kristianson, Shawn Miller, Nathan Allen Plank, Kenny Feeley, Shawn Wilson, Marvin Bush, and Jaren Carruba is the alleged or actual perpetrator are deemed to have occurred before the inception of the CGL Policies, and that Arch therefore does not have a duty to defend or indemnify the Varsity Defendants, USASF, or any other person insured under the CGL Policies and Excess Policies.

101. Arch is entitled to a judicial declaration that all claims alleging acts that meet the definition of "abuse or molestation" in which Scott Foster, Josh Guyton, Traevon Black,

Christopher Hinton, Peter Holley, Brandon Hale, Taji Davis, Erick Kristianson, Shawn Miller, Nathan Allen Plank, Kenny Feeley, Shawn Wilson, Marvin Bush, and Jaren Carruba is the alleged or actual perpetrator are deemed to have occurred before the inception of the Excess Policies, and that Arch therefore does not have a duty to defend or indemnify the Varsity Defendants, USASF, or any other person insured under the Excess Policies.

102.     Arch is entitled to a judicial declaration that all claims alleging acts that meet the CGL Policies' definition of a "sexual abuse occurrence" or the Excess Policies' definition of "abuse or molestation" in which any other person allegedly or actually committed the first act before the inception of the 2017-18 Varsity CGL Primary Policy, the 2019-20 Varsity Excess Policy, the 2017-18 USASF CGL Primary Policy and/or the 2017-18 USASF Excess Policy are deemed to have occurred before the inception of these policies and therefore Arch does not have a duty to defend or indemnify the Varsity Defendants, USASF, or any other person insured under the CGL Policies and Excess Policies issued by Arch to VBH and/or USASF.

103.     Because the first act of a "sexual abuse occurrence" and "abuse or molestation" is deemed to have occurred before the inception of the Arch CGL and Excess Policies, Arch is entitled to a judicial declaration that it does not have a duty to defend or indemnify the Varsity Defendants, USASF, or any other persons insured under the Arch CGL and Excess Policies in the following Abuse Lawsuits:  *Jane Doe 8 v. Varsity Brands Holding Co.*, D.S.C., Civ. A. No. 6:22-3508; *Jane Doe 9 v. Varsity Brands Holding Co.*, D.S.C., Civ. A. No. 6:22-3509; *John Doe 3 v. Varsity Brands Holding Co.*, D.S.C., Civ. A. No. 6:22-3510; *John Doe v. Estate of Foster*, Greenville County S.C., No. 2022CP2304753; *John Doe 1 v. Varsity Brands Holding Co.*, E.D.N.C., Civ. A. No. 5:22-430; *Jane Doe 1 v. Varsity Brands Holding Co.*, M.D. Fla., Civ. A. No. 788 (including the related lawsuits by these plaintiffs filed before this action); *E.M. v.*

*Varsity Brands Holding Co.*, C.D. Cal., Civ. A. No. 9410; *John Doe 1 v. Varsity Spirit, LLC*,
N.D. Ohio, Civ. A. No. 1:23-1960 (including the related federal lawsuit and state-court action);
*Gerlacher v. Cheer Athletics, Inc.*, Travis Co. Texas Dist. Ct., Case No. D-1-GN-21-003338.

104.    In the Abuse Lawsuits and, upon information and belief the Abuse Claims,
plaintiffs allege that the Varsity Defendants and USASF knew or should have known that the
men who abused plaintiffs have abused others before or were abusing plaintiffs, and knew or
should have known that plaintiffs were vulnerable to abuse due to the availability of drugs and
alcohol to them at cheer events, competitions, hotel rooms, and gyms.

105.    To the extent that these allegations are true, Arch is entitled to a judicial
declaration that Arch does not have a duty to defend or indemnify the Abuse Lawsuits.

106.    Arch is entitled to a judicial declaration that it does not have a duty to defend or
indemnify the Varsity Defendants, USASF or any other person insured under the CGL Policies
and Excess Policies under Coverage A of the CGL Policies (except insofar as the Sexual Abuse
Endorsement is part of Coverage A for the 2017-18, 2018-19, 2019-20, 2020-21 policy periods,
and then subject to the limits of the Sexual Abuse Endorsement) to the extent that the Abuse
Lawsuits do not allege or establish that the plaintiff suffered a "bodily injury" that was caused by
an "occurrence" and that occurred during the policy period and that was not known to have
occurred (as provided under Paragraph 1.b(3), c, and d of the Coverage A Insuring Agreement)
and that does not qualify as a "sexual abuse occurrence".

107.    Arch is entitled to a judicial declaration that it does not have a duty to defend or
indemnify the Varsity Defendants, USASF or any other person insured under the CGL Policies
and Excess Policies under Coverage B of the CGL Policies because the Abuse Lawsuits do not
allege that the plaintiffs have damages because of "personal and advertising injury" caused by an

offense arising out of any Named Insured's business that was committed during the applicable policy period.

108. Alternatively, to the extent that the Abuse Claims allege or establish "bodily injury" arising out of "personal and advertising injury", Arch is entitled to a judicial declaration that Arch does not have a duty to defend or indemnify any insured under Coverage A because coverage is barred by the Personal and Advertising Injury Exclusion.

109. Arch is entitled to a judicial determination that Coverage B is not available under the 2021-22 or 2022-23 Varsity CGL Primary Policies or the 2021-22 USASF CGL Policy for any claim that is based upon, arises out of, or is in any way related to a "sexual abuse occurrence".

110. Arch is entitled to a judicial declaration that it does not have a duty to defend or indemnify the Varsity Defendants, USASF, or any other person insured under the CGL Primary Policies or the Excess Policies to the extent that a "personal and advertising injury" occurred that was caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

111. Arch is entitled to a judicial declaration that it does not have a duty to defend or indemnify the Varsity Defendants, USASF, or any other person insured under the CGL Primary Policies or the Excess Policies to the extent that a "personal and advertising injury" occurred that arises out of a criminal act committed by or at the direction of the insured.

112. Certain of the Abuse Claims, including the Tennessee Actions, allege that the plaintiffs were abused by coaches employed by Premier Athletics, LLC ("Premier").

113. Under the 2017-18, 2018-19, 2019-20, and 2020-21 Varsity CGL Primary Policies, coverage for Premier and VBH is limited to $25,000 each occurrence and $50,000

aggregate unless a satisfactory background check was obtained for any full-time employee, coach, or volunteer involved in an abuse or molestation allegation.

114.    Upon information and belief, the abuse alleged in the Tennessee Action involves a "sexual abuse occurrence" by a single perpetrator, Dominick Frizzell. Upon information and belief, the first act of sexual abuse or molestation by Frizzell took place in the 2017-18 policy period or earlier and therefore, under the CGL Policy, the all acts of "sexual abuse occurrence" are deemed to occur then.

115.    Neither VHB nor Premier has demonstrated that a satisfactory background check was obtained for Frizzell.

116.    Neither VHB nor Premier has demonstrated that a satisfactory background check was obtained for any other Premier full-time employee, coach or volunteer.

117.    Arch is entitled to a judicial declaration that coverage for Premier and VHB for the Tennessee Action is capped at $25,000 for all acts of sexual abuse or molestation committed or allegedly committed by Frizzell for which Premier or VHB have legal liability.

118.    Arch is entitled to a judicial declaration that coverage for Premier and VHB for any other Abuse Claim that is deemed to occur in the 2017-18, 2018-19, 2019-20, or 2020-21 Varsity CGL Primary Policies' policy periods is subject to the $25,000 each occurrence and $50,000 aggregate limits.

119.    Under the 2021-22 and 2022-23 Varsity CGL Primary Policies, with respect to the operations of Premier Athletics, LLC, a "satisfactory background check" of "employees", coaches and "volunteer workers" is a condition precedent for coverage.

120.    According to public press reports, James Henry So allegedly worked as a coach for Premier Athletics and sexually assaulted an athlete in February 2023.

121.    Arch is entitled to a judicial declaration that to the extent that the Varsity Defendants or any other person insured under the 2021-22 and 2022-23 Varsity CGL Primary Policies seeks coverage for any Abuse Claim arising out of sexual abuse or molestation by So, Arch does not have a duty to defend or indemnify that Abuse Claim absent proof that a "satisfactory background check," as defined, was obtained before the abuse or molestation occurred.

122.    Arch is also entitled to a judicial declaration that it does not have a duty to defend or indemnify any person insured under a Varsity CGL Primary Policy for damages from any Abuse Claim alleging a "bodily injury" or "personal and advertising injury" arising out of the normal operations of any franchised gym or health club that is not listed in the Schedule of Locations of the applicable Varsity CGL Primary Policy.

123.    In the Abuse Lawsuits, the plaintiffs have asserted breach of contract claims. Although these putative claims have been dismissed in some of the Abuse Lawsuits as to the Varsity Defendants, these court have not dismissed the breach of contract claims as to USASF.

124.    Arch is entitled to a judicial declaration that damages arising from any breach of contract claim are excluded under the CGL Policies and the Excess Policies by the Contractual Liability Exclusions of Coverages A and B and the Breach of Contract Exclusion under Coverage B.

125.    In the Abuse Lawsuits, plaintiffs allege that they received unsolicited videos and photographs from their abusers that were pornographic or offensive because the subject was naked, exposed, or engaged in sexual acts.

126.    In the Abuse Lawsuits, plaintiffs allege that their abusers asked plaintiffs to send the abusers videos or photographs.

127. Arch is entitled to a judicial declaration that it does not have a duty to defend or indemnify the Varsity Defendants, USASF, or any other person insured under the CGL Policies or Excess Policies to the extent that sending or soliciting these materials violates any statute, ordinance or regulation as described in Exclusion q to Coverage A or Exclusion p to Coverage B.

128. Arch is entitled to a judicial declaration that it does not have a duty to defend or indemnify any insured who expected or intended for the claimant in an Abuse Claim or the plaintiff in an Abuse Lawsuit to suffer a "bodily injury".

129. Arch is entitled to a judicial declaration that it does not have a duty to defend or indemnify any insured or other person enumerated in the Exclusion added to the CGL Policies by the Sexual Abuse Endorsement to the 2017-18, 2018-19, 2019-20, and 2020-21 CGL Primary Policies.

130. With respect to any "sexual abuse occurrence" that is deemed to occur in the policy periods of the 2021-22 or 2022-23 Varsity CGL Primary Policies or the 2021-22 USASF CGL Policy, Arch is entitled to a judicial determination that it does not have a duty to defend and/or indemnify any of the persons enumerated in Exclusion (a) to the Sexual Abuse Endorsement whose actions allegedly or actually come within the scope of Exclusion (a).

131. The Abuse Lawsuits allege that the Varsity Defendants, USASF and other persons insured under the 2021-22 or 2022-23 Varsity CGL Primary Policies or the 2021-22 USASF CGL Policy failed to report the sexual abuse of the plaintiff as required by law.

132. Arch is entitled to a judicial declaration that the Varsity Defendants, USASF, and other persons insured under the 2021-22 or 2022-23 Varsity CGL Primary Policies or the 2021-22 USASF CGL Policy are not entitled to coverage under these policies or the Excess Policies for which these CGL Policies are "controlling underlying insurance" to the extent that they were

required to report any acts that constitute a "sexual abuse occurrence" by applicable federal, state, or local law, ordinance, or regulation and failed to do so, as set forth in Exclusions (a)(4) and (e) of the 2021-22 and 2022-23 Varsity CGL Primary Policies and the 2021-22 USASF CGL Policy.

133.    Arch is entitled to a judicial declaration that it does not have a duty to defend or indemnify any person insured under the 2019-20 and 2020-21 Varsity Excess Policies or the 2018-19, 2019-20 or 2020-21 USASF Excess Policies who actually participated in any act of "abuse or molestation".

134.    Arch is entitled to a judicial declaration that it does not have a duty to defend or indemnify any person insured under the 2019-20 and 2020-21 Varsity Excess Policies or the 2018-19, 2019-20 or 2020-21 USASF Excess Policies who is found guilty, pleads guilty to, or plead no contest to any act involved in any "abuse or molestation".

135.    Arch is entitled to a judicial declaration that it does not have a duty to defend or indemnify any person insured under the 2019-20 and 2020-21 Varsity Excess Policies or the 2018-19, 2019-20 or 2020-21 USASF Excess Policies who is subject to a claim for damages which arise out of, result from, involve or in any way relate to acts or omissions of a Named Insured, its officers, directors, "employees", "volunteer workers", students in training or "contract workers" which takes place after the Named Insured or any of its officers or directors acquire knowledge of any "abuse or molestation" attempted or committed by any other officer, director, "employee", "volunteer worker", student in training or "contract worker" of an insured.

136.    In the Abuse Lawsuits, plaintiffs seek to recover fees that they allegedly paid to persons insured under the CGL Policies and the Excess Policies, including Varsity and USASF.

137. Arch is entitled to a judicial declaration that the return of fees is restitutionary and equitable relief that does not qualify as damages and is not insurable under the Arch Policies and the law.

138. Arch is entitled to a judicial declaration that it does not have a duty to indemnify any insured for the return of fees under Exclusion h to the Limited Abuse or Molestation Coverage Endorsement (Sub-Limit) of the Excess Policies incorporating that endorsement.

139. In the Abuse Lawsuits, the plaintiffs seek punitive damages.

140. Arch is entitled to a judicial declaration that the punitive damages sought in the Abuse Lawsuits are not insurable under the Arch Policies and the law.

141. Arch is entitled to a judicial declaration that it does not have a duty to indemnify any insured for punitive, exemplary or multiplied damages, fines or penalties under Exclusion f to the Limited Abuse or Molestation Coverage Endorsement (Sub-Limit) of the Excess Policies incorporating that endorsement.

142. The Varsity CGL Primary Policies that that the insurance provided by these policies is primary.

143. The Sexual Abuse Endorsement to the 2021-22 and 2022-23 Varsity CGL Primary Policies states that the endorsement shall apply only in excess of any other valid and collectible insurance or bond unless the other insurance or bond is written specifically excess of the Sexual Abuse Endorsement.

144. The USASF CGL Primary Policies state that the insurance they provide is excess over any other valid and collectible insurance available to the insured.

145.     USASF is a Named Insured under the Varsity 2017-18 CGL Primary Policy for the period of July 31 to October 9, 2017, and under the 2018-19, 2019-20, 2020-21, and 2021-22 CGL Primary Policies.

146.     Arch is entitled to a judicial declaration that, to the extent that USASF otherwise qualifies for coverage of the Abuse Claims under the Varsity CGL Primary Policies, that the coverage under the Varsity CGL Primary Policies is primary, and coverage under the USASF CGL Primary Policies is excess, for claims that are deemed to have occurred between July 31 and October 9, 2017 or in the 2018-19, 2019-20, 2020-21, and (for claims other than "sexual abuse occurrences) 2021-22 policy periods.

147.     Arch is entitled to a judicial declaration that, to the extent that USASF otherwise qualifies for coverage of Abuse Claims that are "sexual abuse occurrence" claims under the 2021-22 Varsity CGL Primary Policy that are deemed to occur between July 31, 2021 and July 31, 2022, the 2021-22 Varsity CGL Primary Policy and the USASF CGL Primary Policy contribute by equal shares.

148.     VHB has a duty to cooperate with Arch in the investigation, defense, and settlement of the Abuse Lawsuits.

149.     VHB has breached its duty of cooperation by failing or refusing to provide Arch with essential information to allow Arch to assess the exposure of the Abuse Lawsuit defendants insured under the Varsity CGL Primary Policies and Varsity Excess Policies in a manner that would allow Arch to settle the Abuse Lawsuits.

150.     Arch is entitled to a judicial declaration that VBH has a duty to cooperate with Arch in all Abuse Lawsuits and Arch Claims that potentially come within the scope of an Arch Policy.

151. Arch has not consented to settle any Abuse Lawsuit.

152. Arch is entitled to a judicial declaration that Arch does not have a duty to indemnify any settlement that VBH, the Varsity Defendants, or USASF make without Arch's prior written consent.

**WHEREFORE**, Arch requests that judgment be entered in its favor and against VBH and USASF declaring the parties rights and duties under the Arch CGL Primary Policies and Excess Policies.

**COUNT II**
**BREACH OF CONTRACT vs. VBH**

153. Arch incorporates the averments of the foregoing paragraphs.

154. Because VBH refused to provide information to Arch in a timely manner concerning the Arch Claims, Arch has incurred additional costs in excess of $75,000 in an attempt to obtain the information.

155. As averred above, as a condition for coverage under the Arch Policies, VBH, USASF, and all other persons insured under the Arch Policies must obtain Arch's prior written consent to settle any claim or "suit."

156. Upon information and belief, VBH has agreed to settle certain Abuse Claims.

157. Arch did not consent to the settlement that VBH, upon information and belief, reached.

158. Because VBH refused or failed to provide information that Arch needed to fully participate in the mediation ordered in the South Carolina Federal Action, VBH has breached its duty to cooperate with Arch so that Arch can exercise its contractual right to settle claims.

159.     As averred above, as a condition for coverage under the Arch Policies, VBH, USASF, and all other persons insured under the Arch Policies must obtain Arch's prior written consent to incur defense costs, and must cooperate in the defense of "suits".

160.     VBH did not obtain Arch's consent before incurring defense costs.  VBH hired independent counsel apart from the legal team at Ogletree that Arch has approved.  Under the Arch Policies, Arch does not have a duty to pay for the defense costs that Arch did not approve.

**WHEREFORE**, Arch request that the Court find that VBH has breached the Varsity CGL Primary Policies and owes Arch damages in excess of $75,000 together with interest, fees, costs and such other relief as the Court may order.

**Dated: October 30, 2023**  <u>**/s/ D. Craig Lamb**</u>

**WILSON ELSER MOSKOWITZ EDELMAN & DICKER LLP**
James Burd (TN Bar No. 34940)
D. Craig Lamb (TN Bar No. 039901)
3102 W. End Ave; Suite 400
Nashville, Tennessee 37203
james.burd@wilsonelser.com
craig.lamb@wilsonelser.com

**HANGLEY ARONCHICK SEGAL PUDLIN & SCHILLER**

Ronald P. Schiller *(application for admission pro hac vice forthcoming)*
Sharon F. McKee *(application for admission pro hac vice forthcoming)*
One Logan Square, 27th Floor
Philadelphia, PA 19103-6933
Telephone: (215) 568-6200
Facsimile: (215) 568-0300
rschiller@hangley.com
smckee@hangley.com

*Counsel for Plaintiff Arch Insurance Company*